# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:                              :

**CHARLES ZANDFORD**                :          **Bankruptcy Case No.  05-13305**

    Debtor                       :

**CHARLES ZANDFORD**                :

    **Appellant**                :

      v.                    :          Civil Action No. 07-611 GMS

**TRUSTEE ALFRED THOMAS :
GIULIANO**

    **Appellee**



**ON APPEAL FROM AN ORDER OF THE UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF DELAWARE**

**APPELLANT'S MOTION TO TAKE LEAVE OF COURT TO SUBSTITUTE
THE ATTACHED 'APPELLANT'S BRIEF' AND TO WITHDRAW THE BRIEF
<u>THAT WAS FILED ON FEBRUARY 25, 2008</u>**

The Appellant, Charles Zandford, respectfully requests to take leave of Court to substitute the attached 'Appellant's Brief' and to withdraw the brief that was filed with the Court on February 25, 2008.

Yesterday, April 15, 2008, Appellant discovered that he had mistakenly filed the draft of his Appeal Brief. The attached revised brief does not add any new arguments. It is simply the Appeal brief in its final form.

Appellant apologizes to the Court for this mistake.


Respectfully submitted,


Charles Zandford
10 N.E. 4th St
Milford, DE. 19963
(302)725-0655

# **<u>ATTACHMENT</u>**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:                              :

CHARLES ZANDFORD            :           Bankruptcy Case No. 05-13305

    Debtor                     :

CHARLES ZANDFORD            :

    Appellant                  :

      v.                       :           Civil Action No. 07-611 GMS

TRUSTEE ALFRED THOMAS :
GIULIANO

    Appellee

---

## APPELLANT'S BRIEF

## STATEMENT OF JURISDICTION

The Bankruptcy Court's granting of the Panel Trustee's turnover demand is a final order, and the Court has jurisdiction over this appeal pursuant to 28 U.S.C. §158(a)(1).

## I. INTRODUCTION

Appellant, Charles Zandford, appeals the orders of the Honorable Peter J. Walsh granting the Trustee's motion to compel Appellant to turnover 6 months of pre-petition bank statements and denying reconsideration of the order.

This appeal is subject to the old Bankruptcy Code, and raises factual and legal issues of adequacy and timeliness of evidence used to support the Bankruptcy Court's order compelling Appellant to turnover 6 months of pre-petition bank statements 16 months after his discharge and in absence of any revelation of any sort that could justify such order. The documents requested were from financial institutions disclosed by Appellant. The existence of these bank accounts were known to the Trustee long before Appellant's discharge on March 27, 2006.

The Trustee's post-discharge turnover demand lacked any relevant evidence to support it and was untimely. The evidence was a misrepresentation by the Trustee and additional, conflicting representations about why the United States Trustee ('UST') wanted the documents. The turnover demand will create an unfair and substantial burden on Appellant. Moreover, the request constitutes a request for a turnover order that fails to comply with the requirements for turnover, and if the purpose of the request is to revoke the discharge for fraud, the allegations of the motion and the statements to the Court do not meet the pleading requirements for fraud.

Appellant provided Judge Walsh with the documents requested and asked that they be filed under seal pending the outcome of the reconsideration motion or any appeal(s) that may follow. Judge Walsh denied the request and returned the documents.

## II. STATEMENT OF THE CASE

(1)  Chapter 7 Trustee moved to compel Appellant to turnover 6 months of pre-petition bank statements 16 months after his discharge. The UST and the Trustee knew about these bank accounts before Appellant's discharge on March 27, 2006. They were declared on the schedules. <u>Consequently, no argument can be made that the documents constituted new matters not known earlier.</u>

(2)  Judge Walsh misunderstood the Trustee's duties before and after a debtor's discharge, and granted the Trustee's motion in absence of the requisite pleading requirements of F.R.C.P. Rule 9(b); Bankruptcy Rule 7009;

(3)  Evidence presented during the September and December hearings in support of Trustee's turnover demand consisted of a lie, and two conflicting statements, and neither presents any evidence of hiding assets or a legitimate reason to order the turnover, and both relate to matters that were undertaken previously or should have been undertaken in the ordinary course of a Chapter 7 case administration prior to Debtor's discharge. Trustee's request for the documents lacked any substantial basis and was untimely;

(4)  Trustee's motion to compel turnover is defective, and should have been denied on both procedural and substantive grounds;

(5)  The scope of trustee's duty to investigate has to be considered in context of debtor's case status. This appeal presents an unprecedented situation where a discharged debtor is subjected to re-examination of his financial affairs in absence of  discovery of fraudulent misconduct, or any thing else for that matter, that could justify a turnover demand. There is no provision, or reference, in the Bankruptcy Code, or in the UST's Manual, governing Chapter 7

case administration, that accords the Trustee such arbitrary authority. Trustee's turnover demand constitutes abuse of authority;

(6) In a chapter 7 liquidation case, <u>discovery is primarily a pre-discharge tool</u>. Congress has granted the trustee ample tools and opportunity to investigate a debtor's financial affairs to efficiently locate situations of omitted assets or transactions that can be dealt with <u>prior to a debtor's discharge.</u> Trustee relies on pre-discharge Sections of the Code as legal authority for his post-discharge turnover demand. Post-discharge the only remedy available to Trustee is to revoke the discharge pursuant to Section 727(d);

(7) The sole basis of Trustee's turnover demand is based upon speculation and a conclusory allegation:" **what we are trying to do is to determine whether there are any additional assets for the Trustee to administer, <u>and we believe that there may be information contained in those bank statements</u> that might provide us with assets to administer for the Court at least answer the questions that the U.S. Trustee asked the Chapter 7 Trustee to ask the debtor <u>and potentially to close the case"</u>** Exhibit 5, Page 3 lines 13-20. No law was cited in support of the turnover demand;

(8) Trustee's post-discharge pursuit of additional assets with hopes of finding evidence to support his speculation constitutes an impermissible fishing expedition to revoke Appellant's discharge;

(9) When Judge Walsh was put on notice of this fact during the December hearing his initial reaction was: **<u>"That's impossible,"</u>** ( Exhibit 5, Page 3 line 10), and told Appellant **<u>"Your discharge can not be revoked"</u>** (Exhibit 5, Page 6 line 17). Upon Appellant's further explanation of Section 727(d) and particularly subsection (d)(2), Judge Walsh stated : **" <u>Oh, really? Is that what statute says or is that case law"</u>** (Exhibit 5, Page 7 lines 3-4). When told it

was the statute, he said: **"I've never faced this issue before"** (Exhibit 5, Page 7, line9);

(10)  Judge Walsh's order is a novel 'back door' approach for potential revocation of a debtor's discharge, thus rendering the statute and its limitations meaningless.

The transcripts of these hearings, especially the December hearing, will plainly establish that Judge Walsh misunderstood the law, and the legal implication of his order. At one point, Judge Walsh asked the Trustee's counsel to read the relevant sections of §727 (d) to him. When Judge Walsh finally recognized his mistake, he attempted to correct it without admission, by offering a deal to the Trustee's Counsel and the UST's representative – namely a stipulation that the Trustee(s) would not seek revocation in exchange for the requested documents ( Exhibit 5, Page 17, lines 15-19). This offer was readily rejected by the Trustee's counsel and the UST's representative; and,

(11)  The Bankruptcy Court did not understand the law applicable to its exercise of discretion, and consequently, exceeded the bounds of its discretion.

### III. BACKGROUND

1.  In November 2004, Appellant's wife who was essentially the sole provider of the family passed away intestate.

2.  On October 11, 2005, the Debtor filed a voluntary pro se Chapter 7 bankruptcy in United States Bankruptcy Court for the District Of Delaware. The case was assigned case number 05-13305 and assigned to Judge Walsh. Although the case was initially filed as a pro se no asset Chapter 7, in answer to question 19 of Schedule B, Appellant declared the following: "My wife's estate is in probate. There are five parties of interest, I am one. I do not know how

4

much, if any amount will be available for distribution" (Exhibit 1).

3.  In late November 2005, Appellant received a letter of First Administration from his deceased wife's estate administrator George F. Obrecht Esq., notifying him of his first distribution share of $75,000. Exhibit 2  is a letter from Mr. Obrecht which  plainly establishes the fact that Debtor could not have known the amount of his share of inheritance at the time the Chapter 7 bankruptcy was filed.

4.  Given this unexpected development, Appellant hired a bankruptcy attorney, James B. Tyler Esq., for the sole purpose of amending the Petition and its schedules and filing it as an asset Chapter 7 bankruptcy. Debtor's case was discharged as an asset Chapter 7 bankruptcy on March 27, 2006. The bankruptcy case remains open pending adjudication of related appeals.

5.  On March 8, 2007, the Trustee's Counsel made an informal written request to Appellant for copies of all his bank account statements for the six-month period immediately preceding the filing of his pro se bankruptcy case on October 11, 2005. Appellant refused to comply with this order because the Trustee's lack of reference to any legal authority for this untimely request gave Appellant pause to question the legitimacy of this turnover demand and its potential financial implication.

6.  On July 31, 2007, Trustee filed a "motion to compel debtor to turnover records to chapter 7 trustee." On September 6, 2007, a hearing was held before the bankruptcy Court, and the Trustee's motion was granted.

7.  The Bankruptcy Court's order failed to distinguish between a trustee's duties before and after a debtor's discharge, and is premised entirely on a misunderstanding of applicable law. There is no provision in the Bankruptcy Code that allows a trustee to resume investigation of a

discharged debtor upon vague suspicion and conjecture. This is in violation of the policy of finality of a debtor's discharge. Hence, this appeal follows.

## IV. ARGUMENTS AND AUTHORITIES

### 1.    The Request Lacks An Adequate Basis And Was Untimely

The request for the documents lacked an adequate basis and was untimely. The bases for the order were inadequate. The Trustee misrepresented Appellant's Petition on a matter known by the Trustee to be false. Also, the Trustee gave conflicting reasons at two hearings about why the United States Trustee wanted the documents, and both were nothing more than a general, interest based on matters known since the beginning of the case. The request was made sixteen months after a discharge, which is too long under law for a general request for documents.

Congress has granted the trustee ample tools and opportunity to investigate a debtor's financial affairs to efficiently locate situations of omitted assets or transactions that can be dealt with prior to a debtor's discharge. Trustee had more than ample time to request and examine these documents prior to Appellant's discharge.

The law governing the request for the documents is basic principles from the Bankruptcy Code and is described and applied in **In re Gross, 121 B.R. 587 (Bankr. S.D. 1990)**. In **Gross**, the Court refused to allow discovery and amendment of a motion after confirmation of a plan under circumstances with more evidence presented to the Court of a need for the documents than was presented here. The evidence included the inference of fraud in transferring land to a non-party to the bankruptcy proceeding, **121 B.R. 590, 593**, which is not present here. Here, the documents were requested more than a year after the discharge. The decision was based on three basic principles from the Bankruptcy Code: the finality of the Court's orders regarding the bankruptcy plan, the protection of the debtor, and the affirmative duty of the Trustee to

investigate prior to approval of a plan for discharge of the debts. Each principle applies here.

*Gross* established the rule in a Chapter 12 case that discovery would only be allowed after confirmation if the Trustee or other party presented a "significant quantum of evidence" supporting the need for the discovery. That rule should apply here because the Court has evaluated the assets and the advice of the Trustee and issued the equivalent confirmation order and because the Trustee had the same duties to investigate assets and advise the Court before confirmation. **Gross** held that mere suspicion alone was insufficient to meet the burden. Id. Some evidence must be submitted to the court in order to protect Appellant against frivolous and baseless conjecture.

### *A.*    The Factual Bases Offered For The Orders Are Inadequate

The Trustee offered three factual bases over two hearings in support of the request for the documents. All are inadequate to justify the orders. The documents requested are records from banks that were disclosed by Appellant within his original petition. The Trustee did not request these records from Appellant before discharge, and the Trustee offered no reason why he did not or could not subpoena or request them earlier.

One basis was a particularly vicious misrepresentation of Appellant's disclosures, which the Trustee knew was false at the time he made the misrepresentation. The Trustee told Judge Walsh that Appellant did not disclose within his original petition an interest in the estate of his deceased wife:

> "Mr. Cianciuli: Right. The history, Your Honor, is that Mr. Zandford **did not list as an asset of his**, his expectancy of inheritance from his deceased wife, which we have now collected in excess of a $100, 000 for the benefit of the creditors." See Exhibit 4, lines 21-25 (emphasis added).

In answer to question 19 of schedule B, Appellant plainly declared his interest in his wife's estate. Exhibit 1.

7

Trustee's counsel had just received nearly $11,000 for management of this bankruptcy case, and according to his Interim Fee Application he had reviewed every document in the case, and was an active participant in the §341 hearing. He knew he was lying. Exhibit 1, plainly establishes the lie because it specifically documents his review of the petition in which the Appellant disclosed the interest that the Trustee told Judge Walsh that he did not list.

The other two bases offered conflict with each other and were different explanations for a mere general interest by the United States Trustee. The Trustee told Judge Walsh one story at the first hearing, and the United States' Trustee's representative told Judge Walsh a different story at the second hearing about why the United States Trustee wanted the documents.

The first time, the reason was Appellant's earlier criminal conviction:

> "Mr. Cianciulli: Judge, as I mentioned earlier, my understanding is that the United States Trustee's office in reviewing certain cases that Mr. Guiliano was handling red flagged this case in particular given Mr. Zandford's history, and when I say history, I mean specifically his conviction for securities fraud, **and there was a heightened concern,** and as a result, there was a recent request of the Panel Trustee to take a closer look at certain of the records, including the debtor's bank statements." Exhibit 4, p. 10, lines 21-25, and p. 11, lines 1-4 (emphasis added).

The threshold question in this statement is who, if anybody, had 'constructive notice' of the debtor's conviction and incarceration prior to his bankruptcy discharge date of March 27, 2006. Constructive notice is such notice as will lead a prudent man to further inquiry. See, e.g. **United States v. Smith (In re Hagendorfer),** 803 F.2d 647, 649 (11th Cir. 1986; ); **State Bank of India v. Kaliana (In re Kaliana),** 202 B.R. 600, 605 (Bankr. N.D. Ill. 1996).

The UST had knowledge of Appellant's felony conviction and incarceration soon after it received his petition and schedules from the Bankruptcy Court's clerk in October 2005, months before Appellant's discharge  In his Memorandum in support of motion for reconsideration (docket # 123), Appellant established that both the UST and the Trustee had 'constructive notice'

8

of Appellant's felony conviction long before his discharge. The UST utilizes a customized

database of public records, which is used to identify and locate assets, verify social security

numbers <u>and obtain litigation history information</u> (Exhibit 6, 5-2.1.4).

     In addition to the knowledge from the UST's regular investigations, the trustee knew

about the conviction because his lawyer spent 20 minutes discussing it with and SEC lawyer, and

the conversation is documented within the fee request.  <u>Exhibit 7,</u> is a page from Trustee's

counsel' Interim Fee Application to the Bankruptcy Court. The second entry on this page shows

that on December 22, 2005, the Trustee's lead attorney, Kenneth E. Aaron (KEA), had a 20

minute telephone conversation with Ms. Amy Greer, SEC's attorney, regarding the **'HISTORY**

**OF CASE'**. This document plainly establishes an incontrovertible fact that all the trustees, and

counsel, had full knowledge of Zandford's felony conviction and incarceration <u>as late as</u>

<u>12/22/2005, over 3 months before Appellant's discharge.</u>

     Once the trustee is in possession of facts that put a reasonable person on notice of a

possible fraud, he has a duty to diligently investigate to determine if ground exists for the denial

of the debtor's discharge and if so to timely file a complaint. **Anderson v. Vereen, 219 B.R. 691**

**(D.S.C. 1997).** Despite this knowledge, and its attendant 'heightened concern' of potential fraud,

Appellant attended a **§ 341** hearing as required by the UST (See Exhibit 6, 5-2.1.1), and was

discharged on March 27, 2006. No request for these documents was made by either UST or the

Trustee.

     After Appellant filed his motion to reconsider with the documentation of the UST's

knowledge of the conviction, a new reason was offered at the second hearing – "case

administration:

> "Mr. Harrington: Your Honor, again, for the record, William Harrington for the office of United States Trustee. I did want to clarify one sort of, I think, **potential misstatement that is floating around**. If there was a request by our office to review this file by the Trustee, it has to do with case administration not with respect to any status of the debtor particularly. So, as to whether or not he had a prior conviction, I mean it would go to case administration. I think the allegation has been made it's based on history. Its actually based on whether we think proper case administration had occurred here, not with respect to just history, so I just wanted to clarify that, and – ..." Exhibit 5, p. 17, lines 3-14 (emphasis added)

"Case administration" is a vague term that offers the Court no evidence of why the documents are requested. It's use probably was intentional because it was vague.

Mr. Harrington wanted the Court to believe that the reason for the turnover demand now was a vague 'case administration' rather than Appellant's felony conviction, and seems to blame the Trustee for lack of diligence and the earlier "misstatement". Whether proper case administration had occurred in this case, or not, raises an administrative issue for the UST and the Trustee, and not the Appellant. Appellant had complied with all that was asked of him by the Trustee and was discharged after the Trustee advised the Court that discharge was appropriate and the Court relied on the discharge.

In the UST's Manual, the administration of a chapter 7 case consists of well over 100 sections. See Exhibit 8. Mr. Harrington makes no specific reference to any one section as a basis for the turnover demand.

Furthermore, Mr. Harrington's statement directly contradicts the UST's statutory duties. UST's involvement in a bankruptcy case begins at filing. The Petition, and schedules, are transmitted to the U.S. Trustee's office for the region pursuant to Rule 1002(b) of the Federal Rules of Bankruptcy Procedure. This case was referred to the U.S. Trustee's office by mid October 2005- over 2 years ago. The U.S.T has the statutory and procedural duty to thoroughly examine these petitions, and schedules, for completeness and consistency. This duty is

10

heightened as to the UST as this office has the statutory and procedural ability to thoroughly review every petition of a debtor and examine them at a Section 341 hearing. **In re Richard,** 165 B.R. 642 (Bkrtcy. W.D. Ark. 1994).

The UST also relies on other agencies to verify the accuracy of information contained in the debtor's petition and schedules.  See Exhibit 6, UST Manual Volume 5: Chapter 5-2: Detecting Fraud And Abuse- 5-2.1.3).

The UST also utilizes a customized database of public records, which is used to identify and locate assets, verify social security numbers and obtain litigation history information (Exhibit 6, 5-2.1.4).

The same statutory duty to examine debtor's Petition and schedules applies to the Trustee pursuant to §704(a)(4). The UST and Trustee had ample opportunity to timely request these documents during the §341 hearing, or pursuant to a Rule 2004 examination prior to Appellant's discharge. The UST/Trustee's decision not to request these documents is not attributable to either the action or the inaction of Appellant. The requested documents were either deemed unnecessary, or the UST/ Trustee were dilatory in discharge of their statutory duties. **In re Jones,** 71 B.R. 682 (S.D. Ill. 1987), the Court stated that "A party may be guilty of laches by failing to show proper diligence in attempting to discover the necessary facts before discharge." **71 B.R. at 685**.

Like any other fiduciary, a trustee must act with reasonable care and due diligence in discharging his statutory duties. **In re Melenzyr,** 140 B.R. 143, 154 (Bankr. W.D. Tex. 1992). Since a Trustee makes decisions without the benefit of hindsight, a Trustee's administration of a case should be evaluated in light of information available to him at the time. **E.g. Sloan v. Hoffman (In re Chavez),** 157 B.R. 30, 33 (D. Colo.) aff'd, 13 F.3d 404 (10th Cir 1993).

Both the UST and Trustee had knowledge of Appellant's bank accounts. They were declared by Appellant in his bankruptcy Petition. Therefore, whether one believes the first story or the second story, they are inconsistent and constitute matters that must have been undertaken at the beginning of every case pursuant to the statutory duties of the Trustee. No reason was given for why the documents were not considered earlier. Given that the UST and the Trustee have failed to demonstrate that they lacked knowledge of the bank accounts that they are now seeking, their turnover demand must fail as a matter of law.

Evidence presented during the September and December hearings in support of Trustee's turnover demand consisted of a lie, and two conflicting statements, and neither presents any evidence of hiding assets or a legitimate reason to order the turnover, and both relate to matters that were undertaken previously or should have been undertaken in the ordinary course of a Chapter 7 case administration prior to Debtor's discharge. Trustee's request for the documents lacked any substantial basis and was untimely.

The bases for the order are nothing more than misrepresentations that were intended to prejudice Judge Walsh and inconsistent with the statutory scheme of a Chapter 7 liquidation case. The bases are inadequate to justify a post-discharge request for documents known to exist at the beginning of the case. Given the plain and unambiguous statutory language of §704 and §727, to affirm Judge Walsh's order would be akin to an unrestricted discretion to interpret the statute in any way that suits his views of the parties before him, thus rendering the statute meaningless.

To the extent that The Federal Rules of Civil Procedure are incorporated in the Bankruptcy Code, such a ruling is inconsistent with the standard that late discovery is not allowed if parties had the requisite knowledge and had adequate time to conduct it earlier. Rule

26(b)(2)(ii), forecloses the Trustee's right to seek turnover of these documents. The rule states in pertinent part, "The party seeking discovery has had ample opportunity by discovery in the proceeding to obtain the information sought." [In law, discovery is the pre-trial phase in a lawsuit in which each party through the law of civil procedure request documents and other evidence from the other party. In bankruptcy, discovery is conducted pre-discharge. "Discovery should not be extended when a party had an ample opportunity to pursue the evidence during discovery." See **Harris v. Computer Assocs. Int'l, Inc**., 204 F.R.D. 44, 45 (E.D.N.Y. 2001). Rule 26 of the FRCP governs discovery and its limitations and is incorporated in bankruptcy rules.  Rule 26(b)(2)(ii), forecloses the Trustee's right to seek turnover of these documents after having had ample opportunity to do so.  The rule states in pertinent part, "The party seeking discovery has had ample opportunity by discovery in the proceeding to obtain the information sought."]

**B.    The Law**

Three basic principles from the Bankruptcy Code conflict with Judge Walsh's orders.

**1 & 2.    Protection And Finality**

The Court's orders require finality, **and d**ebtors need protection from "fishing expeditions" and "merry-go-round plan confirmation," **_Gross_** 121 B.R. at 593-94, 595:

> "... However, the Court shall not permit a vague suspicion to be the basis to launch a fishing expedition in hopes of locating fraudulent actions to revoke or modify a confirmed plan or to deny debt discharge more than two years after confirmation.  To allow unsubstantiated rumors, possibly started maliciously by disgruntled entities, to upset a confirmed plan and deny discharge would sentence the debtor to an economic prison walled in by fear and disaster.  The debtor would be forced to defend, at great legal and emotional expense, against any telltale allegation.  Finality would prove elusive if the fraud exception could reverse confirmation or deny debt discharge on gossip alone.
>
> ...

... Statutory language instructing an early filing of an investigation report and plan confirmation posturing contemplate a primarily pre-confirmation investigation responsibility of the Trustee. Pre-confirmation investigations efficiently locate situations of omitted assets or transactions which can be dealt with prior to confirmation. Thus, a merry-go-round plan confirmation phenomenon, where the absent-minded debtor who inadvertently failed to list an asset which could lead to plan revocation and reformulating a new plan for subsequent confirmation, or denial of debt discharge after the plan has been completed, is generally avoided. Moreover, the Trustee-sought 2004 examination is generally a pre-confirmation discovery tool, and, only in a narrow context, may the 2004 examination be used post-confirmation. **Cinderella**, 93 B.R. at 377. Examination is limited to issues the court still may entertain. **Id**. While a 2004 examination may be narrowly used post-confirmation, such examination is not justified on the evidence presented at this hearing."

The stated basis of the Trustee's turnover demand for six months of pre-petition bank statements was only a "vague suspicion" unsupported by any evidence:

> **"... what we are trying to do is to determine whether there are any additional assets for the Trustee to administer, and we believe that there may be information contained in those bank statements that might provide us with assets to administer for the Court at least answer the questions that the U.S. Trustee asked the Chapter 7 Trustee to ask the debtor and potentially to close the case."** See Exhibit 5, Page 3 lines 13-20 (emphasis added).

The Trustee offers only speculation and a conclusory allegation that there may be additional assets. The record is devoid of any salient facts to support this suggestion. The Bankruptcy Court has allowed a "vague suspicion" to be the basis to launch a fishing expedition in hopes of locating fraudulent actions to revoke Appellant's discharge. "Discovery is not intended as a **fishing expedition** permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action." **Gerald Zuk v. Eastern Pennsylvania Psychiatric Institute of the Medical College of Pennsylvania,** 103 F3d, 294, 299 (3rd Cir. 1996) ; **Micro Motion, Inc. v. Kane Steel Co., Inc.,** 894 F.2d 1318, 1327 (Fed. Cir. 1990). ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim. That the discovery might uncover evidence showing that a plaintiff has a

14

legitimate claim does not justify the discovery request.") (citations omitted). Discovery is not a license to make claims without any factual basis or justification. Trustee has failed to produce any evidence to legally and factually justify the turnover demand.

Furthermore, even if Trustee was entitled to these documents post Appellant's discharge, Trustee could not close this case under any circumstances pending the adjudication of Appellant's appeal of an adversarial proceeding against the Securities and Exchange Commission ('SEC') (Bankruptcy Case No. 05-13305- AP 06-81), and any following appeals.

Section 350 of the Bankruptcy Code requires the court to close a case once the estate is fully administered and the court has discharged the trustee. Bankruptcy Rule 5009 provides that in Chapter 7 cases, there is a presumption that the estate has been fully administered and the case may be closed if (1) the trustee has filed a final report and final account and has certified that the estate has been fully administered, and (2) within 30 days after the trustee's filing and certification, no objection has been filed by the United States trustee or a party in interest.

The reference above to **"...potentially closing the case..."** is intended to deceive the Bankruptcy Court as a justification for the request, but it underlies the real motivation behind the turnover demand – namely to find 'anything' that would open the door to attack Appellant's discharge.

The Bankruptcy Court erred in allowing Trustee to launch a fishing expedition in hopes of locating misconduct to revoke Appellant's discharge. In absence of discovery of fraudulent conduct, a discharge should protect a debtor against unsubstantiated suspicion, and harassment.

Without **finality** after the Court examines the assets and the claims of the parties, all debtors and Appellant will be subject to the merry-go-round" that **Gross** describes and the Bankruptcy Code intended to prevent. After the Court evaluates the assets and the claims of the

15

parties, the order that incorporates the Court's evaluation that issues requires finality <u>unless significant evidence is presented of a change in circumstances.</u>

The evidence documents that the Trustee's turnover demand was a "fishing expedition." Appellant needs and is entitled under the Bankruptcy Code to the same protection that the Court in **Gross** identified and used to deny a request for documents. In addition, the evidence presented and rejected in **Gross** to justify the request was greater than the evidence here. In **Gross**, the evidence was newly identified and implicated fraud. Here, the evidence presented has been known since the filing of the petition; the reasons offered conflict with each other; <u>and the only fraud comes from statements of the Trustee to Judge Walsh.</u>

Appellant's need for protection involves both needless expense and emotional burden. The Bankruptcy estate in which Appellant has a pecuniary interest has been forced to pay for the Trustee's activities, which include misrepresentation about Appellant's plain disclosure of an interest in his wife's estate, and doubtless, the Trustee will seek payment from Appellant for his pursuit of the documents here, at the bidding of the United States Trustee and others. The emotional burden of representing himself against lawyers over irrelevant matters and when the case should have been over has taken a substantial toll on the Appellant both emotionally and in terms of time.

The real reason for the request was explained by the Trustee to Zandford in hall outside the courtroom after the first hearing. The Trustee explained that SEC wanted the documents, was displeased at Zandford opposing SEC's pursuit of a claim in the Bankruptcy Court, which is now on appeal, and would punish Zandford for his opposition. The Trustee alluded to this real reason earlier, in Court, when he explained at the first hearing that after the documents were received, and before he knew what information they contained, that additional documents would

16

be requested thereafter: "…that once we receive those bank statements, we may ask for additional supporting documentation" Exhibit 4, p. 1, lines 8-11.  Zandford will be asked to pay monetarily and emotionally for his willingness to say here that the SEC must follow the Debt Collection Improvement Act of 1996 unless this inadequate request is denied.

### 3.    The **Trustee Has Statutory Duty To Investigate The Financial Affairs of Debtor Before Discharge And To Advise The Court If Discharge Is Appropriate**

The Trustee has a statutory duty to investigate the financial before discharge.  **Gross** was a Chapter 12 case. Both Chapter 12 and Chapter 7 use the same language to require the Trustee to "investigate" "assets." 11 U.S.C. §704(a)(4), 1202(b)(2) (requiring 11 U.S.C. §1106(a)(3) "investigation" of "assets").  The Trustee also has the duty to advise the Court if discharge is appropriate. 11 U.S.C. §§704(a)(6), 1202(b)(2) (requiring 11 U.S.C. §1106(a)(3) advising regarding" desirability of the continuance of such business, and any other matter relevant to the case or ot the formulation of the plan"). The Trustee requested the documents more than a year, 16 months, after discharge and after advising the Court that discharge was appropriate and after the Court relied on this advice from the Trustee.

In a chapter 7 liquidation case, discovery is a pre-discharge tool. The primary duty of a Chapter 7 Trustee is to collect and reduce to money the assets of the estate and make appropriate distribution of the proceeds to creditors  §§ 704(a)(1) and 726. To this end, Congress has granted the trustee ample tools and opportunity to investigate a debtor's financial affairs to efficiently locate situations of omitted assets or transactions that can be dealt with prior to a debtor's discharge, and as such, a trustee derives broad discretion in examining the financial affairs of a debtor pre-discharge.

17

Trustee has a statutory duty to investigate the financial affairs of a debtor before discharge. Where as here, the statute's language is plain, "the sole function of the courts is to enforce it according to its term." **Ron Pair Enterprises Inc.,** 489 U.S. 235, 241 (1989). Section § 704(a)(4), authorizes the trustee to investigate the financial affairs of the debtor, and §704(a)(6) authorizes the Trustee to dismiss or oppose the debtor's right to a discharge pursuant to §§707(a) and 707(b).

Bankruptcy Rule 2004 authorize a Chapter 7 Trustee to examine "any entity" on "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge...." Bankr. R. 2004(b). Section §727(c)(2) allows the court on request of a party in interest to order the trustee to examine the acts and conduct of the debtor to determine whether a ground exists for denial of discharge.

Such broad authority as outlined above should only apply to a bankruptcy case's pre-discharge status. Judge Walsh's pronouncement that "The U.S. Trustee and the Chapter 7 Trustee have broad discretion to examine the financial affairs of a debtor, and this Court is not going to impose a limitation on that discretionary authority" (Exhibit 4, p.12, lines 20-23), fairly applies to the subject of the examination but not to the timing of the examination. After discharge, the Trustee's broad discretion should be is strictly narrowed when the Court has made evolutions and orders based on the trustee's representations.

The governing principle of a discharge is 'finality,' and not ongoing harassment. Judge Walsh erred in extending the pre-discharge broad discretion of the Trustee to the discharged status of this bankruptcy case.

**Gross** confirms that the Trustee or other party must provide evidence of something special to obtain discovery after the Court has evaluated the assets and the claims and issued an order incorporating its evaluation. Here, in a Chapter 7 case, Court's evaluation of the assets and claims and its order incorporating them, the confirmation of the plan and discharge of the debtor, occur simultaneously. In **Gross,** under Chapter 12, discharge is not granted until the confirmed plan is implemented. The Court's evaluation and orders concerning them arise at confirmation. The principles from the Bankruptcy Code of finality and protection should be applied at the analogous time in a Chapter 7 case, when the Court has concluded its evaluation and issues its orders based on them. It would be inconsistent and unfair to rule otherwise and deny finality and protection to a Chapter 7 debtor when debtors under other Chapters are subject to the same statutory standards and provided finality and protection at this time.

**Gross** cites and applies the evidentiary standard applicable in a Chapter 7 case to a related matter from **In re Metro Shippers, Inc., 63 B.R. 593 (E.D. Pa. 1986)**. 121 B.R. at 594-95. In **Metro**, the Court ruled that the standard by which an unsecured creditor is determined to hold an avoidable preference is a "substantial quantum of evidence" and ruled that the "meager evidence introduced by the interim trustee" was insufficient" to satisfy this standard. This Court cannot order discovery without at least some quantum of evidence, if not a significant quantum of evidence, that something new has occurred since the beginning of the case to justify the request for documents here. Some evidence must be submitted to the Court in order to protect against frivolous and baseless conjecture. **Id**. The misrepresentation and conflicting evidence of ordinary practice are no different that the "meager evidence" rejected in **Metro** and applied in **Gross**.

19

The additional analysis and ruling of the Court in **Gross** regarding the scope of Rule 2004 examinations conforms to the limitations it recognized and should be applied here, 121 B.R. at 595:

> "Moreover, the Trustee-sought 2004 examination is generally a pre-confirmation discovery tool, and, only in a narrow context, may the 2004 examination be used post-confirmation. **Cinderella**, 93 B.R. at 377. Examination is limited to issues the court still may entertain. **Id**. While a 2004 examination may be narrowly used post-confirmation, such examination is not justified on the evidence presented at this hearing."

The Trustee's written motion is inadequate for another reason. It cites only pre-discharge authority of the debtor and the trustee. This request occurred after discharge, when the standard is different and greater. Congress has equipped the trustee with **§727(d)** for the very purpose of revoking a debtor's discharge based upon discovery of fraudulent conduct. Therefore, in absence of misconduct by a discharged debtor, the Code does not provide the Trustee with authority to resume investigation of a debtor.

### 2.    The Trustee's Turnover Demand Is Legally Defective And Should Have Been Denied On Procedural and Substantive Grounds

The Trustee's Turnover demand is legally defective and relies on pre-discharge sections of the code as its basis for its post discharge demand. On March 8, 2007, the Trustee's Counsel made an informal written request to Appellant for copies of all his bank account statements for the six-month period immediately preceding the filing of his pro se bankruptcy case on October 11, 2005. Appellant did not comply with the request due to Trustee's lack of referral to any legal authority in support of the turnover demand. On July 31, 2007, Trustee invoked the turnover provision of 11 U.S.C. 542(a) and filed a **"MOTION TO COMPEL DEBTOR TO TURNOVER RECORDS TO THE CHAPTER 7 TRUSTEE."** (Docket # 97)( Exhibit 3). A motion to compel turnover of property constitutes an 11 U.S.C. §542 action. See, e.g., **Brown v. Pyatt (In re Pyatt), 486 F.3d 423, 425 (8th Cir. 2007) (an old code case)**.

### 3.    Text Of Aforementioned Sections

These sections pertain in entirety to pre-discharge phase of Trustee's examination of a debtor.

**11 USC § 521.  Duties of debtor (in pertinent part)**

(3) if a trustee is serving in the case or an auditor serving under <u>section 586(f) of title 28</u>, cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title;

(4) if a trustee is serving in the case or an auditor serving under <u>section 586(f) of title 28</u>, surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate, whether or not immunity is granted under <u>section 344</u> of this title;

(5) appear at the hearing required under <u>section 524(d)</u> of this title;

**11 USC § 524**

d) <u>In a case concerning an individual, when the court has determined whether to grant or not to grant a discharge under section 727, 1141, 1228, or 1328 of this title, the court may hold a hearing at which the debtor shall appear in person</u> - -  (emphasis added)

**********

**11 USC § 704(a).  Duties of trustee (in pertinent part)**

(a) The trustee shall--

(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

(3) ensure that the debtor shall perform his intention as specified in <u>section 521(2)(B)</u> [sic--reference to previous subsection; now 521(a)(2)(B)] of this title;

(4) **<u>investigate the financial affairs of the debtor;</u>**

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

(6) **<u>if advisable, oppose the discharge of the debtor</u>**;   (emphasis added)

### 6.    The **Trustee's Motion To Compel Turnover of Documents Does Not Meet The Pleading Requirement** *For Fraud Of* **F.R.C.P. 9(b)**

Pursuant to F.R.C.P. 9(b) made applicable by Bankruptcy Rule 7009, "[i]n all averments

21

of fraud or mistake, the circumstances constituting fraud or mistake, shall be stated with

particularity before the Bankruptcy Court can order an investigation of a discharged debtor.

The basis of the Trustee's turnover demand for six months of pre-petition bank statements is as

follows:

> **… what we are trying to do is to determine whether there are any additional assets for the Trustee to administer, <u>and we believe that there may be information contained in those bank statements</u> that might provide us with assets to administer for the Court at least answer the questions that the U.S. Trustee asked the Chapter 7 Trustee to ask the debtor <u>and potentially to close the case.</u>** See Exhibit 5, Page 3 lines 13-20 (emphasis added).

Trustee's conclusory allegation "… <u>**we believe that there may be information**</u>

<u>**contained in those bank statements**</u> …," implies fraudulent conduct by Appellant. However, a

conclusory accusation that a debtor acted fraudulently is insufficient to qualify as fraudulent

conduct being pled with particularity. **<u>DeLorean v. Cork Gully,</u>** 118 B.R. 932, 940 (E.D. Mich.

1990).   The Federal Rules of Evidence apply in a Bankruptcy Court. **<u>Bankr. 9017</u>**. The Court

decides matters based on evidence in the record and not on bald conclusory statements. **<u>Gross at</u>**

**<u>594</u>**. The hearings records lack evidence of any fraudulent conduct. Mere suspicion that a debtor

engaged in fraudulent conduct without any evidence presented does not justify an investigation,

or a turnover demand in this case. Trustee's evidence consisted of a lie, and two contradictory

statements and as such do not meet the pleading specificity required by F.R.C.P. 9(b), and

therefore, Trustee's turnover demand is factually deficient.


### 7. <u>The Bankruptcy Court Erred In Allowing Trustee To Launch A Fishing Expedition In Hopes Of Locating Misconduct To Revoke Appellant's discharge</u>

Exhibit 5 is the transcript of the December hearing. The statements made by Judge during

this hearing plainly establish the fact that he misunderstood the applicable law in this matter –

namely Section 727(d). It is quite apparent from his remarks that Judge Walsh did not think that his order would launch a fishing expedition that could potentially attack Appellant's discharge.

When during this hearing Appellant brought this fact to his attention, Judge Walsh  initial reaction was: **"That's impossible,"** ( Exhibit 5, Page 3 line 10), and proceeded to tell Appellant **"Your discharge can not be revoked"** (Exhibit 5, Page 6 line 17). Upon Appellant's further explanation of Section 727(d) and particularly subsection (d)(2),  Judge Walsh stated : " **Oh, really? Is that what statute says or is that case law"** (Exhibit 5, Page 7 lines 3-4). When told it was the statute, he said:  **" I've never faced this issue before"** (Exhibit 5, Page 7, line9);

At one point, Judge Walsh had the Trustee's counsel read the relevant Section to him. When Judge Walsh realized his mistake, he attempted to correct it without admission, by offering a deal to the Trustee's Counsel and the UST's representative – namely a stipulation that the Trustee(s) would not seek revocation in exchange for the requested documents ( Exhibit 5, Page 17, lines 15-19). This offer was readily rejected by the Trustee and the UST's representative.

Clearly Judge Walsh made a mistake. An abuse of discretion may be based on an incorrect legal standard, or a clearly erroneous view of the facts, or a ruling that leaves the reviewing court with a definite and firm conviction that there has been a clear error of judgment. **Ho v. Dowell (in re Ho),** 274 B.R. 867, 871 (9th Cir. BAP, 2002).

In this case Judge Walsh openly admits that he has never faced this issue before. Therefore, Judge Walsh was admittedly unaware of the correct legal standard at the time he ruled, and as such, he lacked the correct legal and/or factual basis to correctly exercise his discretion. His discretion for all practical purposes was made in a legal vacuum.

**In re Fresco Plastics Corp., Inc.**, 996 F.2d 152 (7th Cir. 1993), the Court stated that §105(a) delineates the limited equitable power of bankruptcy courts....Under [§105(a) ], a court may

exercise its equitable powers only as means to fulfill some specific Code provision....see **In re Lapiana**, 909 F.2d 221, 224 (7th Cir, 1990). The Bankruptcy Code does not provide for fishing expeditions as means to revoke a debtor's discharge. Judge Walsh's order granting the Trustee's turnover demand constitutes an abuse of discretion.

## V. CONCLUSION

Based upon the aforementioned reasons, Appellant respectfully requests that the Court reverse the Bankruptcy Court's discovery order of September 6, 2007.

Respectfully submitted,

Charles Zandford
10 N.E. 4th St.
Milford, DE. 19963
302-725-0655

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of 'APPELLANT'S MOTION

TO TAKE LEAVE OF COURT TO SUBSTITUTE THE ATTACHED 'APPELLANT'S

BRIEF' AND TO WITHDRAW THE BRIEF THAT WAS FILED ON FEBRUARY 25,

2008  was  served via first class mail, postage prepaid, on this 17th day of  April 2008,

upon the following:

      Jeffery S. Ciannciulli
      Suite 500
      1339 Chestnut St.
      Phila. , PA.   19107-3519

Charles Zandford
10 N.E. 4th St..
Milford, DE.   19963
(302) 725-0655

Charles Zandford
10 N E 4th St
Milford  DE  19963





$4.60

Clerk
United States District Court
4209 Federal Building
844 King St   Room # 4209
Wilmington, DE   19801

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | |
| CHARLES ZANDFORD | : | Bankruptcy Case No.  05-13305 |
| Debtor | : | |
| CHARLES ZANDFORD | : | |
| Appellant | : | |
| v. | : | Civil Action No. 07-611 GMS |
| TRUSTEE ALFRED THOMAS : GIULIANO | | |
| Appellee | | |

FILED

APR 18 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

R) Scanned

## APPELLANT'S BRIEF

## STATEMENT OF JURISDICTION

The Bankruptcy Court's granting of the Panel Trustee's turnover demand is a final order, and the Court has jurisdiction over this appeal pursuant to 28 U.S.C. §158(a)(1).

## I. INTRODUCTION

Appellant, Charles Zandford, appeals the orders of the Honorable Peter J. Walsh granting the Trustee's motion to compel Appellant to turnover 6 months of pre-petition bank statements and denying reconsideration of the order.

This appeal is subject to the old Bankruptcy Code, and raises factual and legal issues of adequacy and timeliness of evidence used to support the Bankruptcy Court's order compelling Appellant to turnover 6 months of pre-petition bank statements <u>16 months after his discharge and in absence of any revelation of any sort that could justify such order.</u> The documents requested were from financial institutions disclosed by Appellant. The existence of these bank accounts were known to the Trustee long before Appellant's discharge on March 27, 2006.

The Trustee's post-discharge turnover demand lacked any relevant evidence to support it and was untimely. The evidence was a misrepresentation by the Trustee and additional, conflicting representations about why the United States Trustee ('UST') wanted the documents. The turnover demand will create an unfair and substantial burden on Appellant. Moreover, the request constitutes a request for a turnover order that fails to comply with the requirements for turnover, and if the purpose of the request is to revoke the discharge for fraud, the allegations of the motion and the statements to the Court do not meet the pleading requirements for fraud.

Appellant provided Judge Walsh with the documents requested and asked that they be filed under seal pending the outcome of the reconsideration motion or any appeal(s) that may follow. Judge Walsh denied the request and returned the documents.

## II. STATEMENT OF THE CASE

(1)  Chapter 7 Trustee moved to compel Appellant to turnover 6 months of pre-petition bank statements 16 months after his discharge. The UST and the Trustee knew about these bank accounts before Appellant's discharge on March 27, 2006. They were declared on the schedules. Consequently, no argument can be made that the documents constituted new matters not known earlier.

(2)  Judge Walsh misunderstood the Trustee's duties before and after a debtor's discharge, and granted the Trustee's motion in absence of the requisite pleading requirements of F.R.C.P. Rule 9(b); Bankruptcy Rule 7009;

(3)  Evidence presented during the September and December hearings in support of Trustee's turnover demand consisted of a lie, and two conflicting statements, and neither presents any evidence of hiding assets or a legitimate reason to order the turnover, and both relate to matters that were undertaken previously or should have been undertaken in the ordinary course of a Chapter 7 case administration prior to Debtor's discharge. Trustee's request for the documents lacked any substantial basis and was untimely;

(4)  Trustee's motion to compel turnover is defective, and should have been denied on both procedural and substantive grounds;

(5)  The scope of trustee's duty to investigate has to be considered in context of debtor's case status. This appeal presents an unprecedented situation where a discharged debtor is subjected to re-examination of his financial affairs in absence of  discovery of fraudulent misconduct, or any thing else for that matter, that could justify a turnover demand. There is no provision, or reference, in the Bankruptcy Code, or in the UST's Manual, governing Chapter 7

case administration, that accords the Trustee such arbitrary authority. Trustee's turnover demand constitutes abuse of authority;

(6)  In a chapter 7 liquidation case, <u>discovery is primarily a pre-discharge tool</u>.  Congress has granted the trustee ample tools and opportunity to investigate a debtor's financial affairs to efficiently locate situations of omitted assets or transactions that can be dealt with <u>prior to a debtor's discharge.</u>  Trustee relies on pre-discharge Sections of the Code as legal authority for his post-discharge turnover demand.  Post-discharge the only remedy available to Trustee is to revoke the discharge pursuant to Section 727(d);

(7)  The sole basis of Trustee's turnover demand is based upon speculation and a conclusory allegation:" **what we are trying to do is to determine whether there are any additional assets for the Trustee to administer, <u>and we believe that there may be information contained in those bank statements</u> that might  provide us with assets to administer for the Court at least answer the questions that the U.S. Trustee asked the Chapter 7 Trustee to ask the debtor <u>and potentially to close the case"</u>**    Exhibit 5, Page 3 lines 13-20. No law was cited in support of the turnover demand;

(8)  Trustee's post-discharge pursuit of additional assets with hopes of finding evidence to support his speculation constitutes an impermissible fishing expedition to revoke Appellant's discharge;

(9)  When Judge Walsh was put on notice of this fact during the December hearing his initial reaction was:  **"That's impossible,"** ( Exhibit 5, Page 3 line 10),  and told  Appellant **"Your discharge can not be revoked"** (Exhibit 5, Page 6 line 17). Upon Appellant's further explanation of Section 727(d) and particularly subsection (d)(2),  Judge Walsh stated : **" Oh, really? Is that what statute says or is that case law"** (Exhibit 5, Page 7 lines 3-4). When told it

3

was the statute, he said: **"I've never faced this issue before"** (Exhibit 5, Page 7, line9);

(10)   Judge Walsh's order is a novel 'back door' approach for potential revocation of a debtor's discharge, thus rendering the statute and its limitations meaningless.

The transcripts of these hearings, especially the December hearing, will plainly establish that Judge Walsh misunderstood the law, and the legal implication of his order. At one point, Judge Walsh asked the Trustee's counsel to read the relevant sections of §727 (d) to him. When Judge Walsh finally recognized his mistake, he attempted to correct it without admission, by offering a deal to the Trustee's Counsel and the UST's representative – namely a stipulation that the Trustee(s) would not seek revocation in exchange for the requested documents ( Exhibit 5, Page 17, lines 15-19). This offer was readily rejected by the Trustee's counsel and the UST's representative; and,

(11)   The Bankruptcy Court did not understand the law applicable to its exercise of discretion, and consequently, exceeded the bounds of its discretion.

### III. BACKGROUND

1.  In November 2004, Appellant's wife who was essentially the sole provider of the family passed away intestate.

2.  On October 11, 2005, the Debtor filed a voluntary pro se Chapter 7 bankruptcy in United States Bankruptcy Court for the District Of Delaware. The case was assigned case number 05-13305 and assigned to Judge Walsh. Although the case was initially filed as a pro se no asset Chapter 7, in answer to question 19 of Schedule B, Appellant declared the following: "My wife's estate is in probate. There are five parties of interest, I am one. I do not know how

4

<u>much, if any amount will be available for distribution</u>" (Exhibit 1).

3.  In late November 2005, Appellant received a letter of First Administration from his deceased wife's estate administrator George F. Obrecht Esq., notifying him of his first distribution share of $75,000. <u>Exhibit 2</u>  is a letter from Mr. Obrecht which  plainly establishes the fact that Debtor could not have known the amount of his share of inheritance at the time the Chapter 7 bankruptcy was filed.

4.  Given this unexpected development, Appellant hired a bankruptcy attorney, James B. Tyler Esq., for the sole purpose of amending the Petition and its schedules and filing it as an asset Chapter 7 bankruptcy. Debtor's case was discharged as an asset Chapter 7 bankruptcy on March 27, 2006. The bankruptcy case remains open pending adjudication of related appeals.

5.  On March 8, 2007, the Trustee's Counsel made an informal written request to Appellant for copies of all his bank account statements for the six-month period immediately preceding the filing of his pro se bankruptcy case on October 11, 2005. Appellant refused to comply with this order because the Trustee's lack of reference to any legal authority for this untimely request gave Appellant pause to question the legitimacy of this turnover demand and its potential financial implication.

6.  On July 31, 2007, Trustee filed a "motion to compel debtor to turnover records to chapter 7 trustee." On September 6, 2007, a hearing was held before the bankruptcy Court, and the Trustee's motion was granted.

7.  The Bankruptcy Court's order failed to distinguish between a trustee's duties before and after a debtor's discharge, and is premised entirely on a misunderstanding of applicable law. There is no provision in the Bankruptcy Code that allows a trustee to resume investigation of a

discharged debtor upon vague suspicion and conjecture. This is in violation of the policy of finality of a debtor's discharge.  Hence, this appeal follows.


## IV. ARGUMENTS AND AUTHORITIES

### 1.   The Request Lacks An Adequate Basis And Was Untimely

The request for the documents lacked an adequate basis and was untimely. The bases for the order were inadequate.  The Trustee misrepresented Appellant's Petition on a matter known by the Trustee to be false. Also, the Trustee gave conflicting reasons at two hearings about why the United States Trustee wanted the documents, and both were nothing more than a general, interest based on matters known since the beginning of the case. The request was made sixteen months after a discharge, which is too long under law for a general request for documents.

Congress has granted the trustee ample tools and opportunity to investigate a debtor's financial affairs to efficiently locate situations of omitted assets or transactions that can be dealt with prior to a debtor's discharge. Trustee had more than ample time to request and examine these documents prior to Appellant's discharge.

The law governing the request for the documents is basic principles from the Bankruptcy Code and is described and applied in **In re Gross, 121 B.R. 587 (Bankr. S.D. 1990)**. In **Gross**, the Court refused to allow discovery and amendment of a motion after confirmation of a plan under circumstances with more evidence presented to the Court of a need for the documents than was presented here. The evidence included the inference of fraud in transferring land to a non-party to the bankruptcy proceeding, **121 B.R. 590, 593**, which is not present here. Here, the documents were requested more than a year after the discharge. The decision was based on three basic principles from the Bankruptcy Code: the finality of the Court's orders regarding the bankruptcy plan, the protection of the debtor, and the affirmative duty of the Trustee to

investigate prior to approval of a plan for discharge of the debts. Each principle applies here.

*Gross* established the rule in a Chapter 12 case that discovery would only be allowed after confirmation if the Trustee or other party presented a "significant quantum of evidence" supporting the need for the discovery. That rule should apply here because the Court has evaluated the assets and the advice of the Trustee and issued the equivalent confirmation order and because the Trustee had the same duties to investigate assets and advise the Court before confirmation. **Gross** held that mere suspicion alone was insufficient to meet the burden. Id. Some evidence must be submitted to the court in order to protect Appellant against frivolous and baseless conjecture.

### A.    The Factual Bases Offered For The Orders Are Inadequate

The Trustee offered three factual bases over two hearings in support of the request for the documents. All are inadequate to justify the orders. The documents requested are records from banks that were disclosed by Appellant within his original petition. The Trustee did not request these records from Appellant before discharge, and the Trustee offered no reason why he did not or could not subpoena or request them earlier.

One basis was a particularly vicious misrepresentation of Appellant's disclosures, which the Trustee knew was false at the time he made the misrepresentation. The Trustee told Judge Walsh that Appellant did not disclose within his original petition an interest in the estate of his deceased wife:

"Mr. Cianciuli: Right. The history, Your Honor, is that Mr. Zandford **did not list as an asset of his**, his expectancy of inheritance from his deceased wife, which we have now collected in excess of a $100, 000 for the benefit of the creditors." See Exhibit 4, lines 21-25 (emphasis added).

In answer to question 19 of schedule B, Appellant plainly declared his interest in his wife's estate. Exhibit 1.

7

Trustee's counsel had just received nearly $11,000 for management of this bankruptcy

case, and according to his Interim Fee Application he had reviewed every document in the case,

and was an active participant in the §341 hearing. He knew he was lying. Exhibit 1, plainly

establishes the lie because it specifically documents his review of the petition in which the

Appellant disclosed the interest that the Trustee told Judge Walsh that he did not list.

The other two bases offered conflict with each other and were different explanations for a

mere general interest by the United States Trustee. The Trustee told Judge Walsh one story at the

first hearing, and the United States' Trustee's representative told Judge Walsh a different story at

the second hearing about why the United States Trustee wanted the documents.

The first time, the reason was Appellant's earlier criminal conviction:

> "Mr. Cianciulli: Judge, as I mentioned earlier, my understanding is that the
> United States Trustee's office in reviewing certain cases that Mr. Guiliano was
> handling red flagged this case in particular given Mr. Zandford's history, and
> when I say history, I mean specifically his conviction for securities fraud, **and
> there was a heightened concern,** and as a result, there was a recent request of
> the Panel Trustee to take a closer look at certain of the records, including the
> debtor's bank statements." Exhibit 4, p. 10, lines 21-25, and p. 11, lines 1-4
> (emphasis added).

The threshold question in this statement is who, if anybody, had 'constructive notice' of

the debtor's conviction and incarceration prior to his bankruptcy discharge date of March 27,

2006. Constructive notice is such notice as will lead a prudent man to further inquiry. See, e.g.

**United States v. Smith (In re Hagendorfer),** 803 F.2d 647, 649 (11th Cir. 1986; ); **State Bank

of India v. Kaliana (In re Kaliana),** 202 B.R. 600, 605 (Bankr. N.D. Ill. 1996).

The UST had knowledge of Appellant's felony conviction and incarceration soon after it

received his petition and schedules from the Bankruptcy Court's clerk in October 2005, months

before Appellant's discharge In his Memorandum in support of motion for reconsideration

(docket # 123), Appellant established that both the UST and the Trustee had 'constructive notice'

8

of Appellant's felony conviction long before his discharge. The UST utilizes a customized database of public records, which is used to identify and locate assets, verify social security numbers <u>and obtain litigation history information</u> (Exhibit 6, 5-2.1.4).

In addition to the knowledge from the UST's regular investigations, the trustee knew about the conviction because his lawyer spent 20 minutes discussing it with and SEC lawyer, and the conversation is documented within the fee request.  <u>Exhibit 7,</u> is a page from Trustee's counsel' Interim Fee Application to the Bankruptcy Court. The second entry on this page shows that on December 22, 2005, the Trustee's lead attorney, Kenneth E. Aaron (KEA), had a 20 minute telephone conversation with Ms. Amy Greer, SEC's attorney, regarding the **'HISTORY OF CASE'**. This document plainly establishes an incontrovertible fact that all the trustees, and counsel, had full knowledge of Zandford's felony conviction and incarceration <u>as late as 12/22/2005, over 3 months before Appellant's discharge.</u>

Once the trustee is in possession of facts that put a reasonable person on notice of a possible fraud, he has a duty to diligently investigate to determine if ground exists for the denial of the debtor's discharge and if so to timely file a complaint. **Anderson v. Vereen, 219 B.R. 691 (D.S.C. 1997).** Despite this knowledge, and its attendant 'heightened concern' of potential fraud, Appellant attended a **§ 341** hearing as required by the UST (See Exhibit 6, 5-2.1.1), and was discharged on March 27, 2006. No request for these documents was made by either UST or the Trustee.

After Appellant filed his motion to reconsider with the documentation of the UST's knowledge of the conviction, a new reason was offered at the second hearing – "case administration:

9

> "Mr. Harrington:  Your Honor, again, for the record, William Harrington for the office of United States Trustee. I did want to clarify one sort of, I think, **potential misstatement that is floating around**. If there was a request by our office to review this file by the Trustee, it has to do with case administration not with respect to any status of the debtor particularly. So, as to whether or not he had a prior conviction, I mean it would go to case administration. I think the allegation has been made it's based on history. Its actually based on whether we think proper case administration had occurred here, not with respect to just history, so I just wanted to clarify that, and – ..." Exhibit 5, p. 17, lines 3-14 (emphasis added)

"Case administration" is a vague term that offers the Court no evidence of why the documents are requested.  It's use probably was intentional because it was vague.

Mr. Harrington wanted the Court to believe that the reason for the turnover demand now was a vague 'case administration' rather than Appellant's felony conviction, and seems to blame the Trustee for lack of diligence and the earlier "misstatement". Whether proper case administration had occurred in this case, or not, raises an administrative issue for the UST and the Trustee, and not the Appellant. Appellant had complied with all that was asked of him by the Trustee and was discharged after the Trustee advised the Court that discharge was appropriate and the Court relied on the discharge.

In the UST's Manual, the administration of a chapter 7 case consists of well over 100 sections. See Exhibit 8. Mr. Harrington makes no specific reference to any one section as a basis for the turnover demand.

Furthermore, Mr. Harrington's statement directly contradicts the UST's statutory duties. UST's involvement in a bankruptcy case begins at filing. The Petition, and schedules, are transmitted to the U.S. Trustee's office for the region pursuant to Rule 1002(b) of the Federal Rules of Bankruptcy Procedure. This case was referred to the U.S. Trustee's office by mid October 2005- over 2 years ago.  The U.S.T has the statutory and procedural duty to thoroughly examine these petitions, and schedules, for completeness and consistency. This duty is

heightened as to the UST as this office has the statutory and procedural ability to thoroughly review every petition of a debtor and examine them at a Section 341 hearing. **In re Richard,** 165 B.R. 642 (Bkrtcy. W.D. Ark. 1994).

The UST also relies on other agencies to verify the accuracy of information contained in the debtor's petition and schedules.  See Exhibit 6, UST Manual Volume 5: Chapter 5-2: Detecting Fraud And Abuse- 5-2.1.3).

The UST also utilizes a customized database of public records, which is used to identify and locate assets, verify social security numbers and obtain litigation history information (Exhibit 6, 5-2.1.4).

The same statutory duty to examine debtor's Petition and schedules applies to the Trustee pursuant to §704(a)(4). The UST and Trustee had ample opportunity to timely request these documents during the §341 hearing, or pursuant to a Rule 2004 examination prior to Appellant's discharge. The UST/Trustee's decision not to request these documents is not attributable to either the action or the inaction of Appellant. The requested documents were either deemed unnecessary, or the UST/ Trustee were dilatory in discharge of their statutory duties. **In re Jones,** 71 B.R. 682 (S.D. Ill. 1987), the Court stated that "A party may be guilty of laches by failing to show proper diligence in attempting to discover the necessary facts before discharge."  **71 B.R. at 685**.

Like any other fiduciary, a trustee must act with reasonable care and due diligence in discharging his statutory duties. **In re Melenzyr,** 140 B.R. 143, 154 (Bankr. W.D. Tex.  1992). Since a Trustee makes decisions without the benefit of hindsight, a Trustee's administration of a case should be evaluated in light of information available to him at the time. **E.g. Sloan v. Hoffman (In re Chavez),** 157 B.R. 30, 33 (D. Colo.) aff'd, 13 F.3d 404 (10th Cir 1993).

Both the UST and Trustee had knowledge of Appellant's bank accounts. They were declared by Appellant in his bankruptcy Petition. Therefore, whether one believes the first story or the second story, they are inconsistent and constitute matters that must have been undertaken at the beginning of every case pursuant to the statutory duties of the Trustee. No reason was given for why the documents were not considered earlier. Given that the UST and the Trustee have failed to demonstrate that they lacked knowledge of the bank accounts that they are now seeking, their turnover demand must fail as a matter of law.

Evidence presented during the September and December hearings in support of Trustee's turnover demand consisted of a lie, and two conflicting statements, and neither presents any evidence of hiding assets or a legitimate reason to order the turnover, and both relate to matters that were undertaken previously or should have been undertaken in the ordinary course of a Chapter 7 case administration prior to Debtor's discharge. Trustee's request for the documents lacked any substantial basis and was untimely.

The bases for the order are nothing more than misrepresentations that were intended to prejudice Judge Walsh and inconsistent with the statutory scheme of a Chapter 7 liquidation case. The bases are inadequate to justify a post-discharge request for documents known to exist at the beginning of the case. Given the plain and unambiguous statutory language of §704 and §727, to affirm Judge Walsh's order would be akin to an unrestricted discretion to interpret the statute in any way that suits his views of the parties before him, thus rendering the statute meaningless.

To the extent that The Federal Rules of Civil Procedure are incorporated in the Bankruptcy Code, such a ruling is inconsistent with the standard that late discovery is not allowed if parties had the requisite knowledge and had adequate time to conduct it earlier. Rule

26(b)(2)(ii), forecloses the Trustee's right to seek turnover of these documents. The rule states in pertinent part, "The party seeking discovery has had ample opportunity by discovery in the proceeding to obtain the information sought." [In law, discovery is the pre-trial phase in a lawsuit in which each party through the law of civil procedure request documents and other evidence from the other party. In bankruptcy, discovery is conducted pre-discharge. "Discovery should not be extended when a party had an ample opportunity to pursue the evidence during discovery." See **Harris v. Computer Assocs. Int'l, Inc**., 204 F.R.D. 44, 45 (E.D.N.Y. 2001). Rule 26 of the FRCP governs discovery and its limitations and is incorporated in bankruptcy rules.  Rule 26(b)(2)(ii), forecloses the Trustee's right to seek turnover of these documents after having had ample opportunity to do so.  The rule states in pertinent part, "The party seeking discovery has had ample opportunity by discovery in the proceeding to obtain the information sought."]

### B.    The Law

Three basic principles from the Bankruptcy Code conflict with Judge Walsh's orders.

#### 1 & 2.    Protection And Finality

The Court's orders require finality, **and d**ebtors need protection from "fishing expeditions" and "merry-go-round plan confirmation," **_Gross_** 121 B.R. at 593-94, 595:

> "... However, the Court shall not permit a vague suspicion to be the basis to launch a fishing expedition in hopes of locating fraudulent actions to revoke or modify a confirmed plan or to deny debt discharge more than two years after confirmation.  To allow unsubstantiated rumors, possibly started maliciously by disgruntled entities, to upset a confirmed plan and deny discharge would sentence the debtor to an economic prison walled in by fear and disaster.  The debtor would be forced to defend, at great legal and emotional expense, against any telltale allegation.  Finality would prove elusive if the fraud exception could reverse confirmation or deny debt discharge on gossip alone.
>
> ...

13

... Statutory language instructing an early filing of an investigation report and plan confirmation posturing contemplate a primarily pre-confirmation investigation responsibility of the Trustee. Pre-confirmation investigations efficiently locate situations of omitted assets or transactions which can be dealt with prior to confirmation. Thus, a merry-go-round plan confirmation phenomenon, where the absent-minded debtor who inadvertently failed to list an asset which could lead to plan revocation and reformulating a new plan for subsequent confirmation, or denial of debt discharge after the plan has been completed, is generally avoided. Moreover, the Trustee-sought 2004 examination is generally a pre-confirmation discovery tool, and, only in a narrow context, may the 2004 examination be used post-confirmation. **Cinderella**, 93 B.R. at 377. Examination is limited to issues the court still may entertain. **Id**. While a 2004 examination may be narrowly used post-confirmation, such examination is not justified on the evidence presented at this hearing."

The stated basis of the Trustee's turnover demand for six months of pre-petition bank statements was only a "vague suspicion" unsupported by any evidence:

> "**... what we are trying to do is to determine whether there are any additional assets for the Trustee to administer, and we believe that there may be information contained in those bank statements that might provide us with assets to administer for the Court at least answer the questions that the U.S. Trustee asked the Chapter 7 Trustee to ask the debtor and potentially to close the case.**" See Exhibit 5, Page 3 lines 13-20 (emphasis added).

The Trustee offers only speculation and a conclusory allegation that there may be additional assets. The record is devoid of any salient facts to support this suggestion. The Bankruptcy Court has allowed a "vague suspicion" to be the basis to launch a fishing expedition in hopes of locating fraudulent actions to revoke Appellant's discharge. "Discovery is not intended as a **fishing expedition** permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action."

**Gerald Zuk v. Eastern Pennsylvania Psychiatric Institute of the Medical College of Pennsylvania,** 103 F3d, 294, 299 (3rd Cir. 1996) ; **Micro Motion, Inc. v. Kane Steel Co., Inc.,** 894 F.2d 1318, 1327 (Fed. Cir. 1990). ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim. That the discovery might uncover evidence showing that a plaintiff has a

legitimate claim does not justify the discovery request.") (citations omitted). Discovery is not a license to make claims without any factual basis or justification. Trustee has failed to produce any evidence to legally and factually justify the turnover demand.

Furthermore, even if Trustee was entitled to these documents post Appellant's discharge, Trustee could not close this case under any circumstances pending the adjudication of Appellant's appeal of an adversarial proceeding against the Securities and Exchange Commission ('SEC') (Bankruptcy Case No. 05-13305- AP 06-81), and any following appeals.

Section 350 of the Bankruptcy Code requires the court to close a case once the estate is fully administered and the court has discharged the trustee. Bankruptcy Rule 5009 provides that in Chapter 7 cases, there is a presumption that the estate has been fully administered and the case may be closed if (1) the trustee has filed a final report and final account and has certified that the estate has been fully administered, and (2) within 30 days after the trustee's filing and certification, no objection has been filed by the United States trustee or a party in interest.

The reference above to **"…potentially closing the case…"** is intended to deceive the Bankruptcy Court as a justification for the request, but it underlies the real motivation behind the turnover demand – namely to find 'anything' that would open the door to attack Appellant's discharge.

The Bankruptcy Court erred in allowing Trustee to launch a fishing expedition in hopes of locating misconduct to revoke Appellant's discharge. In absence of discovery of fraudulent conduct, a discharge should protect a debtor against unsubstantiated suspicion, and harassment.

Without **finality** after the Court examines the assets and the claims of the parties, all debtors and Appellant will be subject to the merry-go-round" that **Gross** describes and the Bankruptcy Code intended to prevent. After the Court evaluates the assets and the claims of the

15

parties, the order that incorporates the Court's evaluation that issues requires finality <u>unless</u>
<u>significant evidence is presented of a change in circumstances.</u>

      The evidence documents that the Trustee's turnover demand was a "fishing expedition."
Appellant needs and is entitled under the Bankruptcy Code to the same protection that the Court
in **Gross** identified and used to deny a request for documents.  In addition, the evidence
presented and rejected in **Gross** to justify the request was greater than the evidence here.  In
**Gross**, the evidence was newly identified and implicated fraud.  Here, the evidence presented
has been known since the filing of the petition; the reasons offered conflict with each other; <u>and</u>
<u>the only fraud comes from statements of the Trustee to Judge Walsh.</u>

      Appellant's need for protection involves both needless expense and emotional burden.
The Bankruptcy estate in which Appellant has a pecuniary interest has been forced to pay for the
Trustee's activities, which include misrepresentation about Appellant's plain disclosure of an
interest in his wife's estate, and doubtless, the Trustee will seek payment from Appellant for his
pursuit of the documents here, at the bidding of the United States Trustee  and others.  The
emotional burden of representing himself against lawyers over irrelevant matters and when the
case should have been over has taken a substantial toll on the Appellant both emotionally and in
terms of time.

      The real reason for the request was explained by the Trustee to Zandford in hall outside
the courtroom after the first hearing.  The Trustee explained that SEC wanted the documents,
was displeased at Zandford opposing SEC's pursuit of a claim in the Bankruptcy Court, which is
now on appeal, and would punish Zandford for his opposition.  The Trustee alluded to this real
reason earlier, in Court, when he explained at the first hearing that after the documents were
received, and before he knew what information they contained, that additional documents would

16

be requested thereafter: "…that once we receive those bank statements, we may ask for additional supporting documentation" Exhibit 4, p. 1, lines 8-11. Zandford will be asked to pay monetarily and emotionally for his willingness to say here that the SEC must follow the Debt Collection Improvement Act of 1996 unless this inadequate request is denied.

3.    The **Trustee Has Statutory Duty To Investigate**
      **The Financial Affairs of Debtor Before Discharge**
      **And To Advise The Court If Discharge Is Appropriate**

The Trustee has a statutory duty to investigate the financial before discharge. **Gross** was a Chapter 12 case. Both Chapter 12 and Chapter 7 use the same language to require the Trustee to "investigate" "assets." 11 U.S.C. §704(a)(4), 1202(b)(2) (requiring 11 U.S.C. §1106(a)(3) "investigation" of "assets"). The Trustee also has the duty to advise the Court if discharge is appropriate. 11 U.S.C. §§704(a)(6), 1202(b)(2) (requiring 11 U.S.C. §1106(a)(3) advising regarding" desirability of the continuance of such business, and any other matter relevant to the case or ot the formulation of the plan"). The Trustee requested the documents more than a year, 16 months, after discharge and after advising the Court that discharge was appropriate and after the Court relied on this advice from the Trustee.

In a chapter 7 liquidation case, discovery is a pre-discharge tool. The primary duty of a Chapter 7 Trustee is to collect and reduce to money the assets of the estate and make appropriate distribution of the proceeds to creditors §§ 704(a)(1) and 726. To this end, Congress has granted the trustee ample tools and opportunity to investigate a debtor's financial affairs to efficiently locate situations of omitted assets or transactions that can be dealt with prior to a debtor's discharge, and as such, a trustee derives broad discretion in examining the financial affairs of a debtor pre-discharge.

Trustee has a statutory duty to investigate the financial affairs of a debtor before discharge. Where as here, the statute's language is plain, "the sole function of the courts is to enforce it according to its term." **Ron Pair Enterprises Inc.,** 489 U.S. 235, 241 (1989). Section § 704(a)(4), authorizes the trustee to investigate the financial affairs of the debtor, and §704(a)(6) authorizes the Trustee to dismiss or oppose the debtor's right to a discharge pursuant to §§707(a) and 707(b).

Bankruptcy Rule 2004 authorize a Chapter 7 Trustee to examine "any entity" on "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge...." Bankr. R. 2004(b). Section §727(c)(2) allows the court on request of a party in interest to order the trustee to examine the acts and conduct of the debtor to determine whether a ground exists for denial of discharge.

Such broad authority as outlined above should only apply to a bankruptcy case's pre-discharge status. Judge Walsh's pronouncement that "The U.S. Trustee and the Chapter 7 Trustee have broad discretion to examine the financial affairs of a debtor, and this Court is not going to impose a limitation on that discretionary authority" (Exhibit 4, p.12, lines 20-23), fairly applies to the subject of the examination but not to the timing of the examination. After discharge, the Trustee's broad discretion should be is strictly narrowed when the Court has made evalutions and orders based on the trustee's representations.

The governing principle of a discharge is 'finality,' and not ongoing harassment. Judge Walsh erred in extending the pre-discharge broad discretion of the Trustee to the discharged status of this bankruptcy case.

18

**Gross** confirms that the Trustee or other party must provide evidence of something special to obtain discovery after the Court has evaluated the assets and the claims and issued an order incorporating its evaluation. Here, in a Chapter 7 case, Court's evaluation of the assets and claims and its order incorporating them, the confirmation of the plan and discharge of the debtor, occur simultaneously. In **Gross,** under Chapter 12, discharge is not granted until the confirmed plan is implemented. The Court's evaluation and orders concerning them arise at confirmation. The principles from the Bankruptcy Code of finality and protection should be applied at the analogous time in a Chapter 7 case, when the Court has concluded its evaluation and issues its orders based on them. It would be inconsistent and unfair to rule otherwise and deny finality and protection to a Chapter 7 debtor when debtors under other Chapters are subject to the same statutory standards and provided finality and protection at this time.

**Gross** cites and applies the evidentiary standard applicable in a Chapter 7 case to a related matter from **In re Metro Shippers, Inc., 63 B.R. 593 (E.D. Pa. 1986)**. 121 B.R. at 594-95. In **Metro**, the Court ruled that the standard by which an unsecured creditor is determined to hold an avoidable preference is a "substantial quantum of evidence" and ruled that the "meager evidence introduced by the interim trustee" was insufficient" to satisfy this standard. This Court cannot order discovery without at least some quantum of evidence, if not a significant quantum of evidence, that something new has occurred since the beginning of the case to justify the request for documents here. Some evidence must be submitted to the Court in order to protect against frivolous and baseless conjecture. **Id**. The misrepresentation and conflicting evidence of ordinary practice are no different that the "meager evidence" rejected in **Metro** and applied in **Gross**.

The additional analysis and ruling of the Court in **Gross** regarding the scope of Rule 2004 examinations conforms to the limitations it recognized and should be applied here, 121 B.R. at 595:

> "Moreover, the Trustee-sought 2004 examination is generally a pre-confirmation discovery tool, and, only in a narrow context, may the 2004 examination be used post-confirmation. **Cinderella**, 93 B.R. at 377. Examination is limited to issues the court still may entertain. **Id**. While a 2004 examination may be narrowly used post-confirmation, such examination is not justified on the evidence presented at this hearing."

The Trustee's written motion is inadequate for another reason. It cites only pre-discharge authority of the debtor and the trustee. This request occurred after discharge, when the standard is different and greater. Congress has equipped the trustee with **§727(d)** for the very purpose of revoking a debtor's discharge based upon discovery of fraudulent conduct. Therefore, in absence of misconduct by a discharged debtor, the Code does not provide the Trustee with authority to resume investigation of a debtor.

## 2. The Trustee's Turnover Demand Is Legally Defective And Should Have Been Denied On Procedural and Substantive Grounds

The Trustee's Turnover demand is legally defective and relies on pre-discharge sections of the code as its basis for its post discharge demand. On March 8, 2007, the Trustee's Counsel made an informal written request to Appellant for copies of all his bank account statements for the six-month period immediately preceding the filing of his pro se bankruptcy case on October 11, 2005. Appellant did not comply with the request due to Trustee's lack of referral to any legal authority in support of the turnover demand. On July 31, 2007, Trustee invoked the turnover provision of 11 U.S.C. 542(a) and filed a **"MOTION TO COMPEL DEBTOR TO TURNOVER RECORDS TO THE CHAPTER 7 TRUSTEE."** (Docket # 97)( Exhibit 3). A motion to compel turnover of property constitutes an 11 U.S.C. §542 action. See, e.g., **Brown v. Pyatt (In re Pyatt)**, 486 F.3d 423, 425 (8th Cir. 2007) (an old code case).

Trustee's turnover demand, however, does not reference §§542 and 543 which govern a turnover demand. Instead, Trustee relies on §521(a)(3) and (4) and §704(a) as its legal authority, and nothing else.

**A turnover demand is not a discovery tool**, and §521(a)(3) and (4) and §704(a) do not provide the legal basis for a turnover demand. These Sections in pertinent parts govern the statutory duties of a debtor and a trustee before a debtor's discharge is granted or denied, and as such, have no relevance to a §542 action. Implicit in a turnover demand is the trustee's knowledge of the existence of specific asset(s) he seeks to recover **Id.** In this case, the Trustee seeks a fishing expedition in the hopes of finding additional assets, which legally contradicts a § 542 turnover action .

To prevail in a turnover action under § 542, the party seeking turnover must establish (1) that the property is or was in the possession, custody or control of an entity during the pendency of the case, (2) that the property may be used by the trustee in accordance with § 363 or exempted by the debtor under § 522; and (3) that the property has more than inconsequential value or benefit to the estate. See **Alofs Mfg. Co. v. Toyota Mfg., Ky., Inc. (In re Alofs Mfg. Co.), 209 B.R. 83, 91 (Bankr. W.D. Mich. 1997) (citing McClatchey v. Ohio PublicEmployees Deferred Compensation Program (In re Matheney), 138 B.R. 541, 548 (Bankr. S.D. Ohio 1992)); see also Kerney v. Capital One Fin. Corp. (In re Sims), 278 B.R. 457, 475 (Bankr. E.D.Tenn. 2002***)*** (to be recoverable under § 542(a), property must be "exemptible by the debtor or usable, sellable, or leasable by the trustee under § 363").

The chapter 7 trustee, as the party seeking turnover, bears the burden of proving each element by a preponderance of the evidence. **UnitedStates v. Chalmers (In re Wheeler), 252 B.R. 420, 425 (W.D. Mich. 2000) (citing In re Alofs Mfg Co., 209 B.R. at 89-91).** The record

is devoid of such evidence, and the Trustee's motion for turnover of documents should have been denied as procedurally and substansively defective.

In the alternative, Trustee's turnover demand can not be construed as a Rule 2004 (c) examination, because no such application was made to the Bankruptcy Court. And last but not least, Trustee's Turnover demand is not a motion to compel, because Trustee does not know what assets if any exist. Even if one was to give the Trustee the benefit of doubt by considering his motion as a motion for production of documents under F.R.C.P. Rule 34, it would still be legally defective based upon the legal authorities cited therein.

Section 521 defines the duties of the debtor, and Section 704 defines the duties of the trustee. Trustee cites §§521(a)(3) and (4) which must be read in conjunction with §521(a)(5) which references §524(d)- a pre-discharge duty of a debtor, and §704(a) which must be read in conjunction with subsections (a)(4) and (a)(6). Section 704(a)(4) gives the trustee statutory authority to investigate the financial affairs of the debtor, and section §704(a)(6) gives the trustee statutory authority to oppose the discharge if necessary. These are pre-discharge duties of the debtor and the trustee, and do not support the Trustee's motion to conduct discovery after Appellant's discharge.

The Bankruptcy Code girds the Trustee with numerous powers and duties. The extent of the powers and duties is not infinite **In re Gross, 121 B.R. 587, 591 (Bkrtcy. D.S.D., 1990)**. Trustee's duty to investigate, as any duty must be examined within the context the duty applies in order to determine the scope or extent of such duty **Id at 595**. The scope of Trustee's duty to investigate must be considered with the Appellant's post-discharge status. Here, the Trustee cleverly attempts to re-shuffle the statutory scheme governing the Trustee's pre-discharge duty to investigate, and the debtor's pre-discharge duty to cooperate with the Trustee, and apply them to

22

the Appellant's post-discharge status. The code does not provide such authority to a Court or a

Trustee. To quote from **In re Delta Air Lines, 341 B.R. 439, 445 (Bankr. S.D.N.Y. 2006**): "

…The intent of Congress must be presumed to comport with the plain and ordinary meaning of

the words in the statute as Congress wrote it, and it is not for the court to substitute its judgment

in the guise of divining Congressional intent through creative "construction.""

Trustee's motion irrespective of its caption is defective, and should have been denied on

both procedural and substantive grounds . 16 months after Appellant's discharge, in absence of

discovery of misconduct, and the Trustee's utter failure to offer a valid legal or factual basis to

support his turnover demand action, his conduct constitutes abuse of Trustee's authority.

### 3.    **Text Of Aforementioned Sections**

These sections pertain in entirety to pre-discharge phase of Trustee's examination of a

debtor.

**11 USC § 521.    Duties of debtor (in pertinent part)**

(3) if a trustee is serving in the case or an auditor serving under section 586(f) of title 28,
cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under
this title;

(4) if a trustee is serving in the case or an auditor serving under section 586(f) of title 28,
surrender to the trustee all property of the estate and any recorded information, including books,
documents, records, and papers, relating to property of the estate, whether or not immunity is
granted under section 344 of this title;

(5) appear at the hearing required under section 524(d) of this title;


11 USC § 524

d) In a case concerning an individual, when the court has determined whether to grant or
not to grant a discharge under section 727, 1141, 1228, or 1328 of this title, the court may hold a
hearing at which the debtor shall appear in person -  -  (emphasis added)

**********

**11 USC § 704(a).    Duties of trustee (in pertinent part)**


(a) The trustee shall--

(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

(3) ensure that the debtor shall perform his intention as specified in <u>section 521(2)(B)</u> [sic--reference to previous subsection; now 521(a)(2)(B)] of this title;

(4) **<u>investigate the financial affairs of the debtor;</u>**

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

(6) **<u>if advisable, oppose the discharge of the debtor</u>**;   (emphasis added)

4.    The **Trustee's Motion To Compel Turnover of Documents**
**Does Not Meet The Pleading Requirement *For Fraud* Of F.R.C.P. 9(b)**

Pursuant to F.R.C.P. 9(b) made applicable by Bankruptcy Rule 7009, "[i]n all averments

of fraud or mistake, the circumstances constituting fraud or mistake, shall be stated with

particularity before the Bankruptcy Court can order an investigation of a discharged debtor.

The basis of the Trustee's turnover demand for six months of pre-petition bank statements is as

follows:

> **... what we are trying to do is to determine whether there are any additional assets for the Trustee to administer, <u>and we believe that there may be information contained in those bank statements</u> that might provide us with assets to administer for the Court at least answer the questions that the U.S. Trustee asked the Chapter 7 Trustee to ask the debtor <u>and potentially to close the case.</u>** See Exhibit 5, Page 3 lines 13-20 (emphasis added).

Trustee's conclusory allegation "... **<u>we believe that there may be information</u>**

**<u>contained in those bank statements</u>** ....," implies fraudulent conduct by Appellant. However, a

conclusory accusation that a debtor acted fraudulently is insufficient to qualify as fraudulent

conduct being pled with particularity. **<u>DeLorean v. Cork Gully,</u>** 118 B.R. 932, 940 (E.D. Mich.

1990). The Federal Rules of Evidence apply in a Bankruptcy Court. **<u>Bankr. 9017</u>**. The Court

decides matters based on evidence in the record and not on bald conclusory statements. **<u>Gross at</u>**

**<u>594</u>**. The hearings records lack evidence of any fraudulent conduct. Mere suspicion that a debtor

24

engaged in fraudulent conduct without any evidence presented does not justify an investigation, or a turnover demand in this case. Trustee's evidence consisted of a lie, and two contradictory statements and as such do not meet the pleading specificity required by F.R.C.P. 9(b), and therefore, Trustee's turnover demand is factually deficient.

5. **The Bankruptcy Court Erred In Allowing Trustee To Launch A  Fishing Expedition In Hopes Of Locating Misconduct To Revoke Appellant's discharge**

Exhibit 5 is the transcript of the December hearing. The statements made by Judge during this hearing plainly establish the fact that he misunderstood the applicable law in this matter – namely Section 727(d).  It is quite apparent from his remarks that Judge Walsh did not think that his order would launch a fishing expedition that could potentially attack Appellant's discharge.

When during this hearing Appellant brought this fact to his attention, Judge Walsh  initial reaction was: **"That's impossible,"** ( Exhibit 5, Page 3 line 10), and proceeded to tell Appellant **"Your discharge can not be revoked"** (Exhibit 5, Page 6 line 17). Upon Appellant's further explanation of Section 727(d) and particularly subsection (d)(2),  Judge Walsh stated : **" Oh, really? Is that what statute says or is that case law"** (Exhibit 5, Page 7 lines 3-4). When told it was the statute, he said: **" I've never faced this issue before"** (Exhibit 5, Page 7, line9);

At one point, Judge Walsh had the Trustee's counsel read the relevant Section to him. When Judge Walsh realized his mistake, he attempted to correct it without admission, by offering a deal to the Trustee's Counsel and the UST's representative – namely a stipulation that the Trustee(s) would not seek revocation in exchange for the requested documents ( Exhibit 5, Page 17, lines 15-19). This offer was readily rejected by the Trustee and the UST's representative.

Clearly Judge Walsh made a mistake. An abuse of discretion may be based on an incorrect legal standard, or a clearly erroneous view of the facts, or a ruling that leaves the reviewing court

with a definite and firm conviction that there has been a clear error of judgment. **Ho v. Dowell (in re Ho),** 274 B.R. 867, 871 (9th Cir. BAP, 2002).

In this case Judge Walsh openly admits that he has never faced this issue before. Therefore, Judge Walsh was admittedly unaware of the correct legal standard at the time he ruled, and as such, he lacked the correct legal and/or factual basis to correctly exercise his discretion. His discretion for all practical purposes was made in a legal vacuum.

**In re Fresco Plastics Corp., Inc**., 996 F.2d 152 (7th Cir. 1993), the Court stated that §105(a) delineates the limited equitable power of bankruptcy courts....Under [§105(a) ], a court may exercise its equitable powers only as means to fulfill some specific Code provision....see **In re Lapiana**, 909 F.2d 221, 224 (7th Cir, 1990). The Bankruptcy Code does not provide for fishing expeditions as means to revoke a debtor's discharge. Judge Walsh's order granting the Trustee's turnover demand constitutes an abuse of discretion.

## V. CONCLUSION

Based upon the aforementioned reasons, Appellant respectfully requests that the Court reverse the Bankruptcy Court's discovery order of September 6, 2007.


Respectfully submitted,

Charles Zandford
10 N.E. 4th St.
Milford, DE. 19963
302-725-0655

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | |
| CHARLES ZANDFORD | : | Bankruptcy Case No. 05-13305 |
| Debtor | : | |
| CHARLES ZANDFORD | : | |
| Appellant | : | |
| v. | : | Civil Action No. 07-611 GMS |
| TRUSTEE ALFRED THOMAS GIULIANO | : | |
| Appellee | | |

---

**EXHIBITS 1-8 OF
APPELLANT'S MOTION TO TAKE LEAVE OF COURT TO SUBSTITUTE
THE ATTACHED 'APPELLANT'S BRIEF' AND TO WITHDRAW THE BRIEF
THAT WAS FILED ON FEBRUARY 25, 2008**

Form B6B-Cont.
(10/89)

In re _Charles Zandford_____.          Case No. _____

         Debtor                                                          (If known)

## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 11. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Itemize. | X | | | |
| 12. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 13. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 14. Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | | |
| 15. Accounts receivable. | X | | | |
| 16. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 17. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 18. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property. | X | | | |
| 19. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | | MY WIFE'S ESTATE IS IN PROBATE. THERE ARE 5 PARTIES OF INTEREST, I AM ONE. I DO NOT KNOW, HOW MUCH IF ANY AMOUNT WILL BE AVAILABLE FOR DISTRIBUTION. | | |
| 20. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 21. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 22. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |

LAW OFFICES

## OBRECHT AND OBRECHT

SUITE 101

877 OLD BALTIMORE-ANNAPOLIS BOULEVARD

SEVERNA PARK, MARYLAND 21146

'CHARLES F. OBRECHT, JR.
GEORGE F. OBRECHT, III

'LICENSED TO PRACTICE BEFORE
THE PATENT AND TRADEMARK OFFICE.
UNITED STATES DEPARTMENT OF COMMERCE

AREA CODE 410
544-9521

AREA CODE 410
544-1423
TELECOPIER

January 23, 2007

Mr. Charles Zandford
420 Union Street
Milton, Delaware 19968

Re:    ***Estate of Carol J. Zandford***

Dear Mr. Zandford:

Following our telephone conversation on January 22, 2007, I reviewed portions of my file. My notes reveal that my first contact with the SEC attorney was on November 29, 2005 when Amy Greer, District Trial Counsel telephoned me. This was about two weeks after I had filed the First Administration Account which I mailed for filing with the Register on November 16, 2005. On November 30, 2005, Ms. Greer wrote to me and requested that I withhold your distributive share (presumably under the First Administration Account) pending her securing a Writ of Garnishment. Ms. Greer's letter recited the precise amount of your distributive share as set fort in the First Administration Account. I presume that Ms. Greer retrieved that information by accessing the First Administration Account because until that account was filed, neither the Register nor the interested persons could have known what, if any, distribution there might be. You may recall that when I became the personal representative in or about April, 2005, the estate seemed more debt-ridden than asset-laden.

With regard to the final distribution of approximately $15,000 under the Supplement To Third and Final Administration Account, I reaffirm what I said in my January 10, 2007 letter to all interested persons. Distribution to the heirs will be withheld until I determine that the recent claim by the creditors' attorney has been satisfactorily resolved. In that regard, I have been informed by the bankruptcy trustee that your distributive share would still have to be paid to him, as trustee.

Sincerely yours,

George F. Obrecht, III

GFO,III:mln

EXHIBIT 3

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re:                                          :
                                                :        Chapter 7
**CHARLES ZANDFORD,**                           :
                                                :        Case No. 05-13305(PJW)
                                                : **Hearing Date: August 23, 2007 @ 2:30 PM (ESDT)**
                                                : **Objection Deadline:  August 16, 2007**
        Debtor.                                 :

## MOTION TO COMPEL DEBTOR TO TURNOVER RECORDS
## TO THE CHAPTER 7 TRUSTEE

Alfred Thomas Giuliano, the appointed Chapter 7 Trustee (the "Trustee"), by his attorneys, Weir & Partners LLP ("Weir"), hereby moves this Honorable Court for entry of an Order compelling Debtor, Charles Zandford ("Zandford") to immediately produce records requested by the Trustee. In support of the Trustee's Motion to Compel, the Trustee avers as follows:

1.      On October 11, 2005 (the "Petition Date"), the Debtor, Charles Zandford (the "Debtor"), filed a voluntary petition for relief under Chapter 7, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.

2.      On or about October 12, 2005, Alfred T. Giuliano was appointed as the Chapter 7 Trustee in the Debtor's case.

3.      In order to perform his statutory duties pursuant to Section 704(a) of the Bankruptcy Code, it is necessary that the Trustee review any and all assets of the Debtor in order to determine the value of the estate and properly administer the Debtor's case.

4.      Pursuant to Section 521(a)(3) and (4) of the Bankruptcy Code, the Debtor shall cooperate with the Trustee to allow the Trustee to perform his duties pursuant to Section 704(a) and in that regard, the Debtor shall surrender to the Trustee all property of the estate requested by the Trustee, including all books, documents and any and all records of Debtor's estate.

5.    On March 8, 2007, Trustee's counsel requested Debtor to produce all of his bank statements for any and all deposit accounts maintained by the Debtor for the six month period immediately preceding the bankruptcy filing.  A copy of the letter dated March 8, 2007 is attached hereto as Exhibit "A".

6.    Debtor responded on March 12, 2007 indicating he would contact the banking institutes and would forward the requested bank statements. A copy of the letter dated March 12, 2007 is attached hereto as Exhibit "B".

7.    On April 2, 2007, Trustee's counsel advised Debtor that he had not received the documents requested in his March 8, 2007 letter and advised the Debtor if he did not produce the documents within ten days, he would be filing a motion to compel Debtor to produce the records. A copy of the letter dated April 2, 2007 is attached hereto and marked as Exhibit "C".

8.    On April 5, 2007, Debtor responded to Trustee's counsel indicating his refusal to produce the requested documents.  A copy of the letter dated April 5, 2007 is attached hereto as Exhibit "D".

9.    Trustee believes that he needs the records to administer the Debtor's estate properly.

289888-1

10.     To date, the Debtor has not provided the requested records.  The Trustee requests an Order compelling the Debtor to immediately produce his bank statements for any and all deposit accounts for any and all deposit accounts maintained by the Debtor for the six month period immediately preceding the bankruptcy filing which was initially requested on March 8, 2007.

WHEREFORE, the Trustee respectfully requests the Court to enter an Order compelling the Debtor to immediately produce bank statements for any and all deposit accounts maintained by the Debtor for the six month period immediately preceding the bankruptcy filing, or suffer the appropriate sanctions to be imposed upon further application to the Court.

WEIR & PARTNERS LLP

By:____/s/ Jeffrey S. Cianciulli, Esquire_____
        Jeffrey S. Cianciulli, Esquire
        P.O. Box 708
        824 Market Street Mall, Ste. 1001
        Wilmington, De  19899
        (302) 652-8181 (telephone)
        (302) 652-8909 (facsimile)
        *Counsel for the Chapter 7 Trustee*

Dated:  July 31, 2007

289888-1

# EXHIBIT 4

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .    Chapter 7
                                    .
CHARLES ZANDFORD,                   .    Case No. 05-13305(PJW)
                                    .    Sept. 6, 2007 (2:43 p.m.)
          Debtor.                   .    (Wilmington)


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY COURT JUDGE


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

```
 1          THE COURT: The next matter is Charles Zandford.

 2          MR. ZANDFORD: Your Honor, good afternoon.

 3          MR. CIANCIULLI: Good afternoon, Your Honor.

 4  Jeffrey Cianciulli on behalf of the Chapter 7 Trustee, Mr.

 5  Giuliano.  Judge, there are three matters on the amended

 6  agenda.  One is, the first is, the interim fee application of

 7  Weir & Partners.  Mr. Zandford had filed a response which was

 8  in essence a - I've been ill, and I haven't had an

 9  opportunity to review the interim fee application.

10  Obviously, I'll let Mr. Zandford speak to the issue, but he

11  and I spoke last evening, and he told me that he does not

12  have an objection to the fee application.  Is that correct,

13  sir?

14          MR. ZANDFORD: Yes.

15          MR. CIANCIULLI: Okay.  So, Your Honor, I do have an

16  order here if you don't have a copy.  I'm happy to hand it up

17  to you.

18          THE COURT: Okay.  Maybe there's a lot of history to

19  this case that I have forgotten, but when the petition was

20  filed it listed assets of $5,766, and we have 10,000 in fees.

21          MR. CIANCIULLI: Right.  The history, Your Honor, is

22  that Mr. Zandford did not list as an asset of his, his

23  expectancy of inheritance from his deceased wife, which we

24  have now collected in excess of a $100,000 for the benefit of

25  the creditors.
```

PENGAD • 1-800-631-6989

FORM FED

3

1            THE COURT: Oh, okay.

2            MR. CIANCIULLI: From the wife's estate's

3    representative.

4            THE COURT: Okay, I did see that possibility

5    mentioned in the schedules.

6            MR. CIANCIULLI: Your Honor, Mr. Zandford has

7    something to add, I suppose.

8            MR. ZANDFORD: Your Honor, I first filed a pro se

9    petition in which I did mention that there was an estate

10   except that we didn't know how much the estate was worth, but

11   that I was a beneficiary along with three or four other

12   people, depending, you know, but that mention was in the pro

13   se.

14           THE COURT: Yeah, I saw that in the schedules.

15           MR. ZANDFORD: Yeah, so, I want to dispel this

16   repetitive statement that, you know, that I withheld that

17   information.   It wasn't withheld, and I have letters from the

18   Trustee himself that was appointed that, you know, when he

19   took over the case in April of 2005, there were more debts

20   than there were assets, and I have provided - I mean, these

21   things are there and, you know, I just want the Court to know

22   that, you know, I don't want to overload the Court with

23   paperwork and everything else because I'm pro se in this.   I

24   suppose this is one of those things pro se-ers do, but these

25   facts are out there.

4

1       THE COURT: Okay.

2       MR. CIANCIULLI: Your Honor, the second item on the

3   agenda is the Trustee's motion to compel the debtor to

4   produce six months of bank statements for each of the bank

5   accounts that were identified on Schedule B.  The debtor has,

6   I believe, filed a similar response to the response that he

7   filed to the motion for interim fees, which was - it appeared

8   to be in the nature of an objection, but really didn't

9   identify the reasons.  The debtor and I have spoken, and

10  there still appears to be a dispute to some extent.    I

11  believe that the debtor is going to produce the records, but

12  he wants to have an opportunity to locate certain underlying

13  documents or supporting documentation before he produces the

14  bank records, and the Trustee's position is that whether he

15  wants - the debtor wants to find supporting documentation for

16  the bank statements, all we're asking for at this point are

17  the bank statements themselves, and that there's really no

18  need for a delay in producing those documents.  The Trustee,

19  the United States Trustee has requested in this case in

20  particular that Mr. Giuliano request those documents from the

21  debtor, and that request of the Trustee from the U.S. Trustee

22  was fairly recent, within the last six months.  Otherwise,

23  I'm sure that Mr. Giuliano would have requested it prior to

24  then, but I believe the debtor may have a response as well.

25       THE COURT: Do you wish to be heard?

5

1    MR. ZANDFORD: Your Honor, I don't know what this
2  motion is all about and where it comes from, but I look at it
3  in three different ways.  One, I have cooperated with the
4  Trustee –

5    THE COURT: Please come to the podium.

6    MR. ZANDFORD: Yes, Your Honor.  I have cooperated
7  with the Trustee, and I was given a discharge, I believe in
8  April 2006.  At that point there was no cause shown by the
9  Trustee for these documents.  Nothing has happened since then
10 to actually require the production of these documents.  Now,
11 as far as these documents are concerned, I want to try to
12 explain to Mr. – the gentleman here as to why I have problems
13 with their production and why I have hesitation about their
14 production and none of it goes to the fact that I'm trying to
15 conceal anything.  The production issue is that I don't have
16 them.  The reason I don't have them, they coincide with a
17 time in my life where my wife committed suicide.  I have a
18 teenage boy who psychologically and emotionally just
19 collapsed.  I was dealing with two very serious chronic
20 diseases.  I was trying to keep things together.  My wife was
21 the bread earner of the family.  The house that we lived in,
22 because she did not have a will and she had other children,
23 became a matter of probate.  We lost our livelihood, we lost
24 a lot of things.  I had surgeries.  I was on medication and
25 this and everything else.  So, to make a very long story

PENGAD · 1-800-631-6989

FORM FED

```
 1  short, and I don't want to go into specifics, the fact is
 2  that collecting papers or trying to withhold papers from a
 3  possible bankruptcy trustee sometime in the future was not
 4  even in my mind.  It was simply a tragic, insane period in
 5  life, and I don't want to revisit it.  So, as far as these
 6  things are concerned, they are there.  The problem is, one, I
 7  have to go get them.  I have to travel.
 8          THE COURT: Travel to where?
 9          MR. ZANDFORD: Maryland.  Because they won't do it
10  on the phone.  I have to –
11          THE COURT: I'm sorry, who is "they"?
12          MR. ZANDFORD: I'm sorry?  According to the bank.
13          THE COURT: I'm sorry, are you saying you don't have
14  any bank statements –
15          MR. ZANDFORD: For that period of time.
16          THE COURT: – in your possession?
17          MR. ZANDFORD: And prior.  In my possession.
18          THE COURT: Possession or control.
19          MR. ZANDFORD: I'm sorry?
20          THE COURT: In your possession or control?
21          MR. ZANDFORD: In my possession.
22          THE COURT: Or control?
23          MR. ZANDFORD: Or control.
24          THE COURT: You don't have any bank statements in
25  your possession or under your control for the relevant
```

1 | period.

2 |       MR. ZANDFORD: For the period of time, yes, sir, and

3 | a few months after that.

4 |       THE COURT: Was it not your practice to maintain

5 | bank statements as personal records?

6 |       MR. ZANDFORD: I used to but not during this period

7 | when I was dealing with those other issues, Your Honor.

8 |       THE COURT: And this is the six-month period

9 | preceding your petition?

10 |       MR. ZANDFORD: It was actually more than six months,

11 | but they're talking about the six months.  To produce these

12 | things, I have to go to the banks.  I have to pay for the

13 | reproduction of the statements.  I have to pay for the

14 | reproduction of checks.  I have to have the receipts, and you

15 | have to understand under the circumstances of the time, the

16 | prevailing circumstances, the time period that they're

17 | talking about, with everything that was going on, I have

18 | lapses of memory.  I had, you know, other things to worry

19 | about and not really think about bank statements or receipts

20 | or this or that which I need to reconstruct this.  That's

21 | just a normal human reaction, Your Honor, and, you know, I'm

22 | not making anything more part of it then needs to be made.

23 | Now, having said this, I don't understand where - I actually

24 | filed a motion for clarification whether my case was being

25 | treated under the new bankruptcy law or the old bankruptcy

8

1  law because the language of the motions which they have filed
2  is really the language of 721(d)(4) which gives it the
3  Trustee unlimited time to, you know, to conduct discovery and
4  you know obtain whatever it is that he needs to obtain.  My
5  case falls under the old law, and what I'm trying to do is -
6  not to cooperate with the Trustee.  I'm asking as under what
7  authority this demand is being made now, a year after the
8  discharge was passed.  They haven't charged me with anything.
9  Just out of blue, one day I get this thing that says we need
10  six months of your, you know, bank records.  Now, the
11  discovery period for the Trustee under the old law runs out,
12  I think, 60 days prior to discharge unless he asks for a
13  continuation or a creditor, same thing applies to any other
14  interested party.  So, that has run out.  They cannot be
15  treating my case under the new law because it falls under the
16  old law, and I don't understand how the fact that I have to
17  cooperate with the Trustee under § 521, subsections (a)(3)
18  and (4) gives the Trustee an unlimited power to want to
19  conduct audits long after the discharge has been granted and
20  that no cause has been shown for this request.  Even if you
21  look at this motion as avail 2004, giving it 2004, Your
22  Honor, from what I understand, you have to establish a *prima*
23  *facie* case.  There is no reference in this motion why they
24  want it, under what authority they want it, they just want
25  it.  And so, now, I am going to go through all of this

9

1  trouble of, you know, reconstructing that period of time, not
2  that specifically, that six months, but I'm sure it would
3  require more time than that, and give it to them, and jump
4  through the ropes, which I'm sure they will put me through,
5  and then they're going to come out and say, What?  We found
6  this and this and this and this, and under the law - I guess
7  under the old law, which would be 721(b)(1), I believe, which
8  would apply to these six months of records that they're
9  asking for, they have to say that we just discovered this.
10  We didn't know that they existed.  The Trustee, Your Honor,
11  has a duty too besides the debtor.  The Trustee has a duty
12  under § 704 to conduct an examination, to investigate the
13  financial records, ask whatever he needs, and he could have
14  asked for these things then and there would have been no
15  argument.  I wouldn't have been in front of you saying I went
16  through this and that and I didn't have it.  I'll be out
17  there gathering these things.

18          THE COURT: But the burden on you now would be the
19  same burden that you would have to borne if they asked for it
20  the day after you filed your petition.

21          MR. ZANDFORD: That's right, Your Honor, but the
22  problem is, the problem now is that the period of discovery
23  for the Trustee has run out, and I'm trying to understand
24  under what authority.  This is what I'm asking.  What is the
25  Trustee's authority out of the blue without stating any

1   cause, any reason, to ask for these things? And then put me
2   through this and then when all is done, and even if they
3   don't find anything, unless say they come up with something,
4   what are they going to fall back on? 721(b)(1)? Are they
5   going to say, We didn't know about this. We just discovered
6   this, and we want to file revocation of the discharge. Then
7   the issue becomes - Did they know about it? Could they have
8   known about it? Should they have known about it? I mean
9   this is something that really is going nowhere except to put
10  me through this hoop, you know, to run around trying to put
11  all these things together and, you know, satisfy their
12  whatever it is, whatever reason it is that they're doing
13  this. But there are three issues. One, the period of
14  discovery for the Trustee is over. Two, there is no cause
15  shown for this request, and three, what they're asking for,
16  you know, is something that the Trustee never even knew even
17  in the beginning, and they haven't come up and told me
18  anything that why they need it right now. Very simple
19  understanding of the law. That's my position.

20          THE COURT: Response?

21          MR. CIANCIULLI: Judge, as I mentioned earlier, my
22  understanding is that the United States Trustee's Office in
23  reviewing certain of the cases that Mr. Giuliano was handling
24  red flagged this case in particular given Mr. Zandford's
25  history, and when I say history, I mean specifically his

11

1  conviction for securities fraud, and there was a heightened
2  concern, and as a result, there was a recent request of the
3  Panel Trustee to take a closer look at certain of the
4  records, including the debtor's bank statements.  I don't
5  believe that asking for the bank statements for those
6  accounts that Mr. Zandford has identified on Schedule B for a
7  period of six months is an onerous burden.  I will say to
8  you, Your Honor, as I've said directly to the debtor that for
9  sure there is a possibility that once we receive those bank
10 statements, we may ask for some additional supporting
11 documentation.  There is also the realistic possibility that
12 we will review the documents and nothing will appear amiss,
13 and we will not be asking for any additional documents.  I
14 believe that the debtor's concern about the bankruptcy
15 discharge and the issues that may flow from that is
16 misplaced.  This is really at the request of the United
17 States Trustee's Office and Mr. Giuliano that we have access
18 to certain bank statements and really nothing more at this
19 point.  Now, as we know, the Trustee has certain duties, and
20 they include to administer the assets of the estate under
21 § 704.  I'm not sure – the debtor cited to § 721.  I'm not
22 real sure what the relevance of § 721 is, however, for sure
23 the debtor has certain duties and obligations under § 521,
24 and those included producing any records relevant to the
25 assets of the estate.  It's a fairly straightforward request,

12

1  and the debtor mentioned a bank in Maryland.  We may want to
2  ask the debtor what bank that is and what bank account that
3  is.  I understand that there are two bank accounts that were
4  identified as in existence at the time that the case was
5  filed, one being Wilmington Trust and one being M&T Bank.
6  And that's the bank you're referring to, okay.  But I don't
7  believe it puts an onerous burden on the debtor to produce
8  six months of bank statements.

9       MR. ZANDFORD: Your Honor, my understanding is that
10  under the new law some debtors are subject to these random
11  audits by the United States Trustee.  This is the first time
12  I've heard of this, and my past -

13       THE COURT: I don't consider it an audit.

14       MR. ZANDFORD: My past has nothing to do with this.
15  It is because of my past I'm very careful in what I do and
16  what I say and how I handle myself.  So I don't think that
17  should be a reason for consideration.  The problem is, as I
18  say again, where does this unlimited right to conduct
19  examinations - where does it start and where does it end?

20       THE COURT: The U.S. Trustee and the Chapter 7
21  Trustee have broad discretion in examining the affairs of a
22  debtor, and this Court is not going to impose a limitation on
23  that discretionary authority.  It's only six months of
24  statements.  I don't think that's an unreasonable burden.
`5       MR. ZANDFORD: It is not unreasonable, Your Honor.

1    It just takes time and it takes –

2            THE COURT: How much time do you think it will take?

3            MR. ZANDFORD: I have to find out.  My question is,

4    do I have a notice or do I get a notice from the U.S. Trustee

5    that, you know, I've been chosen as such or this is a secret.

6            THE COURT: No, I'll accept counsel's representation

7    to that fact.

8            MR. ZANDFORD: Okay.  So –

9            MR. CIANCIULLI: And, Judge, just so that it's clear

10   to the Court and Mr. Zandford, if we receive the statements

11   and then we need to request additional documentation, we're

12   going to provide him with the time to do that.  This really

13   is limited to the bank statements at this point and

14   understand that our request of Mr. Zandford was first made in

15   early April.  Mr. Zandford – Copies of the letters are

16   attached to the motion.  Mr. Zandford responded that he was

17   not going to be able to produce the documents within 14 days

18   as we had requested but that he was contacting the

19   institutions and would produce those documents as soon as he

20   received them.  We received no documents, and I followed up

21   with a letter explaining to the debtor that if he didn't

22   produce the documents then we would have to file the motion

23   that we're here for today.  Mr. Zandford also asked for

24   additional time.  The hearing was originally scheduled for

25   August.  Without discussing it with Mr. Zandford, I readily

1    changed the date of the hearing or requested that they change

2    to accommodate him.  So, we're now talking about

3    approximately six months from the first request for these

4    documents.

5           THE COURT: I'd like to hear - Mr. Zandford, can you

6    give me an estimate.  I'm going to direct that you produce

7    the documents, the question is, how much time you should be

8    given.

9           MR. ZANDFORD: Your Honor, when I received the

10   letter from Mr. Cianciulli, I didn't think twice about it.  I

11   said, Yes, I will.  That's a matter of record.  I didn't

12   think twice about it.  Two things happened.  One, I contacted

13   the bank and the bank said, Well, you have to come down.  I

14   said, Fine, I'll come down.  Then the question is the

15   reproduction.  The reproduction would entail the statements

16   themselves are not that much of a problem.  The reproduction

17   would be the reproduction of checks, the reproduction of

18   receipts and this and that and everything else so I can have

19   a complete picture so I can give a reasonable answer to the

20   questions.  That's my concern.  I'm talking about a period of

21   time where my memory is rather spotty so I just want to make

22   sure, you know, that I have and I think I believe I've told

23   you this, that I need to be able to give you the answers.

24   So, I need, you know, that's in the hands of the bank, Your

25   Honor.  I can make the request, and they can do it right

15

1   away, they can take their time.  I have not been through this

2   before.

3           THE COURT: Okay, let me ask counsel a question.

4   I'm looking at the order that says, Debtor, Charles Zandford

5   shall on or before blank 2007 produce all bank statements.

6   It doesn't make any reference to checks.

7           MR. CIANCIULLI: That's correct, Judge.  As I've

8   mentioned several times to Mr. Zandford, we are only asking

9   for the bank statements, not any supporting documentation at

10  this point.  So, I understand Mr. Zandford's curiosity.  He

11  wants to be sure he knows what he's giving us, but regardless

12  whether he refreshes his recollection, the information in

13  those statements will not change.  All we're asking for is

14  the statements.

15          THE COURT: Okay.  I'm going to give you 60 days to

16  produce those statements.

17          MR. CIANCIULLI: Judge, just one point.  Looking at

18  the order myself, and of course is says July 2007, you may

19  just want to change the order to say September 2007.

20          THE COURT: Yes, yes, okay.  What would 60 days be?

21  I guess it's November 6.

22          MR. ZANDFORD: Your Honor, may I –

23          THE COURT:  Okay, I've signed the order.  Okay.

24          MR. ZANDFORD: Your Honor, may I – this is just . .

25  . (microphone not recording) declaring the assets on the

16

1    petition.  It's a copy of a letter from the estate

2    administrator.

3            THE COURT: Okay.

4            MR. CIANCIULLI: Your Honor, the third item on the

5    agenda, if you're ready to proceed, was actually a motion

6    filed by Mr. Zandford recently.  It appears to be a motion to

7    direct the Trustee to consult with the debtor before filing

8    motions and scheduling hearings.  Obviously, I would ask that

9    the Court deny that motion.  For sure, we've been considering

10   Mr. Zandford's schedule in the past and we'll continue to do

11   so as is evidenced by the Trustee's willingness to put off

12   the hearings that were scheduled in August and are now before

13   Your Honor today.

14           THE COURT: Well, I assume you comply to the at

15   least 15-day rule.

16           MR. CIANCIULLI: Absolutely, Judge.

17           THE COURT: And you'll serve Mr. Zandford

18   immediately when the motion is filed, he'll receive it

19   presumably within three days, and if he has a scheduling

20   problem he can contact you.

21           MR. CIANCIULLI: As is our standard practice.

22           THE COURT: And particularly in a Chapter 7 case,

23   matters are quite often continued at the request of parties

24   in interest unless there's an emergency, and I can't imagine

25   that in this kind of a case there would be an emergency.

1          MR. ZANDFORD: Your Honor, what brought up this

2   motion, if I may say so, is when you schedule you ask all the

3   parties, you know, if the schedule fits everybody needs, and,

4   you know, I was -

5          THE COURT: Not as a typical bankruptcy proceeding.

6          MR. ZANDFORD: Yeah, but I was receiving -

7          THE COURT: If you have 200 people who are entitled

8   to notice, you can't possibly get advanced consent.

9          MR. ZANDFORD: I understand.  I was scheduled for a

10  surgery, Your Honor, and then -

11         THE COURT: Okay, and it was continued.

12         MR. ZANDFORD: So it was continued, but I received

13  another one which wanted me to respond to something within

14  seven days after the surgery.  I mean that created a little

15  bit of a problem, so I thought maybe if we could have

16  communication given my - what I'm going through right now, it

17  would be much easier.  It really shouldn't have involved the

18  Court.  That's just a matter of common sense.

19         THE COURT: Okay, well, I'm not going to require

20  that he coordinate with your calendar unless there is an

21  abuse, and I don't see an abuse in this case.

22         MR. ZANDFORD: Thank you, Your Honor.

23         MR. CIANCIULLI: Your Honor, that concludes the

24  agenda, thank you.

25         THE COURT: Okay.

1              MR. CIANCIULLI: May we be excused?

2              THE COURT: Yes.

3              (Whereupon at 3:08 p.m., the hearing in this matter

4    was concluded for this date.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18              I, Elaine M. Ryan, approved transcriber for the

19   United States Courts, certify that the foregoing is a correct

20   transcript from the electronic sound recording of the

21   proceedings in the above-entitled matter.

22

23   _Elaine M. Ryan_                          September 21, 2007
     Elaine M. Ryan
     2801 Faulkland Road
     Wilmington, DE 19808
     (302) 683-0221

EXHIBIT 5

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .    Chapter 7
                                    .
CHARLES ZANDFORD,                   .    Case No. 05-13305(PJW)
                                    .
          Debtor.                   .    Dec. 13, 2007 (2:59 p.m.)
                                    .    (Wilmington)

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1        THE COURT: Last matter, Charles Zandford.

2        MR. CIANCIULLI: Your Honor, Jeffrey Cianciulli on

3   behalf of Mr. Giuliano, the Chapter 7 Trustee, and I note for

4   the record that the debtor is in the courtroom, and also Mr.

5   Harrington from the Office of the United States Trustee.

6   Your Honor, there are three matters on the agenda, all of

7   which essentially relate to the debtor's objection or as it

8   may be called, a motion for reconsideration of the order

9   entered September 6th of this year compelling the debtor to

10  produce to the Chapter 7 Trustee six months' pre-petition

11  bank statements, and the debtor has filed the motions, and I

12  would suggest to the Court that perhaps the debtor may like

13  to expand on his request for relief.

14       THE COURT: I've read the motions.  What's the

15  Chapter 7 Trustee's position?

16       MR. CIANCIULLI: Well, the Chapter 7 Trustee's

17  position had been, Your Honor, that we had discussed with the

18  debtor the possibility that we would agree to the filing of

19  the bank statements under seal but with the caveat that once

20  or if the appeal, because the debtor has actually filed a

21  notice of appeal of the September 6th order, that if that

22  appeal were to be dismissed or denied or quashed, that the

23  bank statements would be released.  The debtor has rejected

24  that position, that suggestion, and would prefer to reserve

25  whatever appellate rights he may have to the Third Circuit,

1  assuming the District Court were to deny his appeal.  It
2  appears that if the debtor's motion were fairly described as
3  a motion for reconsideration, that it was filed within 10
4  days of the entry of the order, but there really doesn't
5  appear to be any new issue raised by the debtor, and again,
6  the motion seems to focus on the idea that the Trustee is
7  seeking the documents to enable the Trustee or another party
8  in interest to move to revoke the debtor's discharge, which
9  is simply not the case.

10          THE COURT: That's impossible.

11          MR. CIANCIULLI: It's, in fact, impossible since the
12  discharge was entered over one year before - over one year
13  before the request.  In any event, what we're looking to do
14  is to determine whether there are any additional assets for
15  the Trustee to administer, and we believe that there may be
16  information contained in those bank statements that might
17  provide us with assets to administer for the Court at least
18  answer the questions that the U.S. Trustee asked the Chapter
19  7 Trustee to ask the debtor and potentially to close the
20  case.

21          THE COURT: Okay.  Does the U.S. Trustee wish to be
22  heard?

23          MR. HARRINGTON: Good afternoon, Your Honor.  For
24  the record, William Harrington from the Office of the United
25  States Trustee.  Your Honor, I guess we'd like to be heard on

4

1  a couple of matters.  One, with respect to the motion to

2  seal, we don't think there's any authority under the

3  Bankruptcy Code for these records to be sealed.  There's no

4  reason that they need to be sealed.  And, Your Honor, I guess

5  we don't understand fully the request for reconsideration

6  because we don't think there are any new facts or law alleged

7  in the request, but we do believe in the first instance that

8  the Trustee's request for merely six months of bank

9  statements was a reasonable request in light of the fact that

10  there may be additional assets to administer, and the Trustee

11  needs to finalize his review to make sure there are not

12  additional assets to administer so he can close the case

13  appropriately.  So we do think that's a reasonable request

14  and that the motion for reconsideration should be denied and

15  that also the motion for the filing under seal should be

16  denied.  Your Honor, we're also concerned that, as I read the

17  transcript from the prior hearing, the primary reason the

18  debtor argued that he shouldn't be forced to turn over the

19  bank statements was the difficulty he would have in securing

20  those documents and the burden that would impose on him to

21  secure those documents which, I think, is undercut by his

22  request now to file those same documents under seal with the

23  Court.  If he had them in his possession, it would be just as

24  easy to turn them over to the Trustee as it would be to file

25  them under seal with the Court.

5

1          THE COURT: Okay, what is the status of the

2   administration of the estate?  Are there any assets in the

3   possession of the Chapter 7 Trustee?

4          MR. CIANCIULLI: Yes, there are, Your Honor.  The

5   Chapter 7 Trustee has recovered for the benefit of the estate

6   approximately $100,000 that was distributed from Mr.

7   Zandford's deceased wife's decedent's estate.  The Trustee

8   has now recovered all of the money that is expected to be

9   recovered from the decedent's estate, and all of those funds

10  are now in an account with the Chapter 7 Trustee.

11          THE COURT: And what is the magnitude of the claims

12  against the estate?

13          MR. CIANCIULLI: There are significant claims, Your

14  Honor.  The most significant being the claims of the victims

15  of Mr. Zandford's crime that approximate, I believe,

16  $327,000.  So there is a hope that there will be some money

17  that will make its way to those victims, and if we can

18  administer the estate efficiently and sort of put an end to

19  the administrative expenses including those of our firm,

20  there will be more money left to go to the creditors.

21          THE COURT: Okay.  Mr. Zandford, what do you want to

22  achieve by having these documents filed under seal?

23          MR. ZANDFORD: Your Honor, every time I come here, I

24  hear something new, and I'm really very uncomfortable –

25          THE COURT: I'm sorry, could you come to the podium,

1 | please.

2 | THE CLERK: And please identify yourself.   Thank
3 | you.

4 | MR. ZANDFORD: I'm sorry.   Charles Zandford, pro se.
5 | I come to the Court, you know, under certain pretenses.   I
6 | suppose I should use that word, and then I hear different
7 | things.   I ask - I have written in my motions to the Court
8 | that the order to produce this six months, because I am
9 | discharged, is not a lawful order, and it's not because I am
10 | afraid of releasing these things.   I have gone and I have
11 | obtained those things pursuant to your order, and I have sent
12 | them to you asking to keep them under seal while I find out
13 | whether I am supposed to produce these documents or not.
14 | There is one thing to be - before discharge, Your Honor, they
15 | had all the time.   The United States Trustee knew about it
16 | right away.   They had all the information.

17 | THE COURT: Your discharge cannot be revoked.

18 | MR. ZANDFORD: Yes, it can be, Your Honor, because
19 | my case is still open.   You see, under 7272, my case is still
20 | open, and they can revoke it - See, this is why I come here
21 | and I hear new things every time.   I am under the old law,
22 | and my case -

23 | THE COURT: Hold on just a minute.   Isn't there a
24 | one-year statute of limitations?

25 | MR. CIANCIULLI: There is, but there is an argument,

PENGAD • 1-800-631-6989

FORM FED

```
 1 │ Your Honor, if there's fraud and the case is still open, that
 2 │ there is the possibility that the discharge can be revoked.
 3 │          THE COURT: Oh, really?  Is that what the statute
 4 │ says or is that case law.
 5 │          MR. CIANCIULLI: That's my understanding, Your
 6 │ Honor, I think it's in the statute.
 7 │          THE COURT: Can you read it to me.
 8 │          MR. CIANCIULLI: Yes.
 9 │          THE COURT: I've never faced this issue before.
10 │          MR. ZANDFORD: It's (D)(2) and (D)(3).
11 │          MR. CIANCIULLI: I think that - Your Honor, I
12 │ believe that the time period may arise not from the statute
13 │ itself but rather the Bankruptcy Rules.
14 │          MR. ZANDFORD: No, the statute, section 727(D)(2)
15 │ and (D)(3).
16 │          MR. CIANCIULLI: And it's under 727(E)(2), Your
17 │ Honor.
18 │          THE COURT: And what does it say?
19 │          MR. CIANCIULLI: Which says, Trustee - a creditor of
20 │ the United States Trustee may request a revocation of
21 │ discharge under (2) - It's under subsection (D)(2) or (D)(3)
22 │ of this section before the later of one year after the
23 │ granting of such discharge and the date the case is closed.
24 │ There is some argument that the (B) the day the case is
25 │ closed could also in the case of fraud can be argued . . .
```

8

```
 1    (microphone not recording) seek a revocation.

 2              THE COURT: Okay.

 3              MR. ZANDFORD: I believe that (D)(1) which talks

 4    about the discharge pertaining to fraud.

 5              THE COURT: Give it to me again, I don't have my

 6    little book here.  Seven what?

 7              MR. CIANCIULLI: 727(B) and (E) of the relevant

 8    sections.  (E) contains the time period.

 9              THE CLERK: Sir, would you please step to the

10    microphone.

11              MR. CIANCIULLI: Sure.  I apologize.

12              THE CLERK: Thank you.

13              THE COURT: 727(D), you say?

14              MR. ZANDFORD: (D)(2), Your Honor, and (D)(3), while

15    the case was open, the case stay open for the later of the

16    date one year -

17              THE COURT: Hold on.

18              MR. ZANDFORD: - or whenever the case closes.

19              THE COURT: You're looking at (D)(1)?

20              MR. ZANDFORD: (D)(2) and (D)(3), sir.

21              MR. CIANCIULLI: Your Honor, this is a . . .

22    (microphone not recording) case, and I'm not familiar with

23    whether the Code sections changed in that regard.

24              MR. ZANDFORD: Not in this regard.

25              THE COURT: Well, under (D)(1), it says, "If
```

PENGAD • 1-800-631-6989

FORM FED

9

1    discharge was obtained through fraud of the debtor and the
2    requesting party did not know of such fraud until after the
3    granting of the discharge."  So if the relevant documents
4    suggest fraudulent conduct, obviously - I think, obviously,
5    the Chapter 7 Trustee didn't know of it, would not know of it
6    until he saw the relevant documents.  So I think you're
7    probably right.

8          MR. CIANCIULLI: Yes, but, the time period within
9    which to revoke a discharge under (D)(1) is limited to one
10   year.

11         MR. ZANDFORD: That's oversight.  Your Honor, they
12   can't come charging me with fraud because that's over, but
13   there is another subsection at subsection (D)(2) which is
14   taking property that belongs to the estate, and under the old
15   law, I guess, I don't know anything about the new law, there
16   is also a time frame attached to that that says if the case
17   is still open, the longer of the time will apply, which
18   means, you know, the time that the case closes or, you know,
19   the time after that one year period.

20         THE COURT: Okay, well, let's get back to my
21   original question.  What do you hope to achieve by having the
22   documents filed under seal?

23         MR. ZANDFORD: Your Honor, I just was trying to show
24   you my good faith, that's all.  I have nothing to hide except
25   I don't think that this order is right.  This order was

1   obtained because you were misinformed.  You were lied to, and
2   you were given information that they had, the U.S.T. had, and
3   also, I am also wondering what is the purpose of the panel
4   trustee who is supposed to act as the agent for the U.S.T.
5   and if the so-called history of mine, which was known to
6   these folks prior to my discharge, which is the issue for the
7   request for these documents, was known to them long before my
8   discharge.

9             THE COURT:  Okay, I've read your motion papers.

10            MR. ZANDFORD:  Okay, so, all I'm saying is that you

11   were lied to.  You were given wrong information, and the

12   panel trustee, I guess –

13            THE COURT:  I'm sorry, I'm sorry.  How was I lied

14   to?

15            MR. ZANDFORD:  Well, Mr. Cianciulli, the first thing

16   he said the last time we were in court was to tell you the

17   first thing was that I failed to include in the schedules the

18   fact that I was the beneficiary –

19            THE COURT:  But we immediately correct that

20   misunderstanding.

21            MR. ZANDFORD:  Well, I don't know if it was

22   corrected or not corrected.

23            THE COURT:  It was corrected.  I remember observing

24   that it was filed by amendment.  You disclosed it, and he

25   acknowledged that disclosure.  So how did he lie to you?  He

1 || made a mistake.

2 ||       MR. ZANDFORD: I'll take his mistake.

3 ||       THE COURT: And it was immediately corrected.

4 ||       MR. ZANDFORD: And then he went on to say that -

5 || went on to say that the request for these documents was due

6 || to my history. My point to you, Your Honor, is that they've

7 || known about my history since the day I filed my petition.

8 || Eighteen months later, after I had been discharged, they are

9 || not coming and asking for these things, and all I'm saying is

10 || that since I am now been discharged, I'm subject to different

11 || rules, and the purpose of me putting these things under seal

12 || is I am trying to cooperate with the Court but at the same

13 || time, I don't believe that this was a lawful order, that's

14 || all. That's all I'm trying to do, and I believe that I have

15 || the right to appeal. I am not trying to hide anything.

16 ||       THE COURT: Well, you've taken an appeal.

17 ||       MR. ZANDFORD: I'm sorry?

18 ||       THE COURT: You've taken an appeal; haven't you?

19 ||       MR. ZANDFORD: I - No, that raises the other issue.

20 || I took an appeal, and I got a letter back from the board, the

21 || panel which is a law firm that this is an interrogatory

22 || appeal.

23 ||       THE COURT: All right, I saw the letter.

24 ||       MR. ZANDFORD: And I have asked that the Court hold

25 || me in contempt with sanctions so that I can appeal. I filed

12

1 | the motion and also sent a letter along with those statements

2 | to you that I be held in contempt and sanctioned until I go

3 | through these appeals.

4 | THE COURT: I'm not going to do that at your

5 | request.  If the Chapter 7 Trustee wants to have you held in

6 | contempt, they can file an appropriate motion, and in all

7 | likelihood I would grant it, but I want the record to be very

8 | clear that the basis for the Chapter 7 Trustee's request for

9 | these documents is to determine whether there are additional

10 | assets of the estate to be distributed to your creditors.

11 | MR. ZANDFORD: Yes, Your Honor, and I believe that

12 | that request is an unlawful request, since I've been

13 | discharged, and I'm now subject to a different set of rules.

14 | THE COURT: Okay.

15 | MR. ZANDFORD: That's all I'm saying.  And the

16 | reason I sent those things to you is that there's really

17 | nothing to hide and I just wanted to make sure that I am -

18 | THE COURT: Well, I'm not sure I would be in a

19 | position to evaluate as to whether you were hiding anything

20 | or not.

21 | MR. ZANDFORD: No, I know that, but I just want -

22 | THE COURT: That's the Chapter 7 Trustee's job.

23 | MR. ZANDFORD: I was not trying to hide anything.  I

24 | didn't want this Court to think that I was trying to hide it.

25 | I just have an issue with the order, and I'm willing to be

PENGAD • 1-800-631-6989

FORM FED

1  held in contempt and sanctioned and so that I can do these

2  appeals.  I am discharged.

3           THE COURT: Okay, I've responded to that request.

4           MR. ZANDFORD: Okay.

5           MR. CIANCIULLI: Your Honor, I'd like to note that

6  given that Mr. Zandford has already produced, at least to the

7  Court, bank statements, there may not - depending on what was

8  produced -

9           THE COURT: But he hasn't produced to the Court.

10          MR. CIANCIULLI: He has produced to the Court, and

11 the real question is whether the Court will release those

12 records.

13          THE COURT: Well, I'm not sure what you're referring

14 to.  What has been released to the Court?

15          MR. CIANCIULLI: My understanding - of course I was

16 only copied with the letter that Mr. Zandford sent to the

17 Court my understanding was that Mr. Zandford included with

18 that letter copies of some bank statements that are the

19 subject of the request -

20          THE COURT: Not to my knowledge.

21          MR. CIANCIULLI: Is that not correct, Mr. Zandford?

22          MR. ZANDFORD: Your Honor, I addressed a letter with

23 the bank statements to your office, cc to Mr. Cianciulli

24 without the attachments.

25          THE COURT: I don't think I've seen those.  You know

14

1  what, I've reviewed the pleadings, and I didn't see any bank

2  statements attached.

3          MR. ZANDFORD: Your Honor, it wouldn't have been in

4  the pleadings, it was addressed directly to you.

5          MR. CIANCIULLI: He said it's not filed.

6          MR. ZANDFORD: And it wasn't filed with the Clerk.

7          THE COURT: Okay, I can't say it's not in my

8  chambers, but I - if it is, I haven't looked at it.

9          MR. ZANDFORD: Okay.

10         THE COURT:  But wait a minute, maybe - Okay, I am

11 looking at a November 1, '07 letter which apparently was in

12 my chambers, and I have not heretofore seen it.  The only

13 documents I looked at were those filed by the counsel for the

14 Chapter 7 Trustee under the agenda dated December 11th.  And

15 so I, obviously, am not going to review these documents now,

16 and even if I review them later, I'm not sure what they would

17 tell me or whether I would be in a position to evaluate and

18 address the inquiry that the Chapter 7 Trustee has, i.e., are

19 there assets of the estate that are further subject to

20 distribution to creditors.

21         MR. ZANDFORD: Your Honor, that was not my

22 intention.  I just wanted the Court to have those so that I

23 was at least partially in compliance with the Court order.

24 The question - The problem I have, and these gentlemen

25 simplify it very much, is that, you know, they can request a

1   copy of any check in one of those, and the problem - and that
2   raises a lot of questions because there is still the
3   possibility that they can go to revoke - at least revoke my
4   discharge at this point under (D)(2), and so I am very
5   concerned and you have to understand my concern because I
6   have dealt with a person who is involved in this situation,
7   which has nothing to do with this court hearing, who would
8   put me through that hoop - call it hoops, and, you know, ask
9   questions and documents and things like this. They simplify
10  the matter as, you know, the Chapter 7 wants to see this and
11  that, but it's not that simple, Your Honor.
12             THE COURT: I haven't looked at these, and I'm going
13  to hand it back to you.
14             MR. ZANDFORD: May I?
15             THE COURT: Yes, and this is not in compliance with
16  my order.
17             MR. ZANDFORD: So what do I - What happens next?
18             THE COURT: Well, if the Chapter 7 Trustee wants to
19  file a motion to have you held in contempt, he can do that
20  and it likely will be granted.
21             MR. ZANDFORD: And that will then allow me -
22             THE COURT: Why don't you - if you're willing to
23  show it to me, why do you not show it to the Chapter 7
24  Trustee, why don't you do it with an understanding that he
25  will not share it with anybody but his counsel.

16

1          MR. ZANDFORD: I won't do that because I –

2          THE COURT: All right, all right, here, I'm sorry,

3   there's nothing else to discuss.

4          MR. ZANDFORD: Because what difference does that

5   make.  I mean, you know, it's like giving it to them.

6          THE COURT: Do you have anything else to add?

7          MR. CIANCIULLI: Your Honor, my only concern is that

8   given the pendency of the appeal, I'm not sure whether I can,

9   even if I choose to do so on behalf of the Chapter 7 Trustee,

10  move for an order of sanctions.

11         THE COURT: Well, I think that's a good point.  Did

12  you see the letter from the mediator?

13         MR. CIANCIULLI: I did.  I did, and I just assumed

14  that there may be some action sua sponte by the District

15  Court so I have not moved to quash the appeal.

16         THE COURT: Okay, well then, I think, maybe we have

17  to wait for the District Court to do something.

18         MR. CIANCIULLI: I think that's correct, and we plan

19  to do so, and I think Mr. Zandford's basis for asking to be

20  held in contempt is that he understands now that an ordinary

21  discovery order is not immediately appealable, however, if it

22  is also – if there is also an order holding him in contempt

23  for failure to comply with the order that that may be.  So, I

24  think the best course of action is to wait to see what the

25  District Court does with the appeal.

1          THE COURT: Okay, I agree. Anything else?

2          MR. HARRINGTON: Your Honor, again, for the record,

3  William Harrington for the Office of the United States

4  Trustee. I did want to clarify one sort of, I think,

5  potential misstatement that's floating around. If there was

6  a request by our office to review this file by the Trustee,

7  it has to do with case administration not with respect to any

8  status of the debtor particularly. So, as to whether or not

9  he had a prior conviction, I mean it would go to case

10 administration. I think the allegation has been made it's

11 based on his history. It's actually based on whether we

12 think proper case administration had occurred here, not with

13 respect to just history, so I just wanted to clarify that,

14 and -

15         THE COURT: Okay. Well it strikes me that one

16 solution here is, and I don't know whether the Chapter 7

17 Trustee wants to do this, but possibly involving the U.S.

18 Trustee is to stipulate that you will not seek a revocation

19 of the discharge.

20         MR. HARRINGTON: I understand that, Your Honor. I'm

21 not in a position to agree or not agree to that at this time,

22 but I think that is a suggestion.

23         THE COURT: Okay. I'm just suggesting that as a

24 possible solution.

25         MR. HARRINGTON: I agree, Your Honor.

18

1     MR. CIANCIULLI: And, Your Honor, I'm happy to

2  discuss that issue with the Chapter 7 Trustee.  It strikes me

3  that given - I'll use the word "history" again, it's unlikely

4  from my perspective that Mr. Zandford would be willing to

5  agree to that, but maybe he can speak to that issue while

6  we're here.

7     MR. HARRINGTON: Your Honor, I'm not sure we need to

8  speak to that issue as we stand here today because I know I'm

9  not in a position -

10     THE COURT: Okay.  I do not have to have the answers

11  today.  Is that it?

12     MR. CIANCIULLI: It is, Your Honor.

13     THE COURT: Okay, we stand in recess.

14     MR. CIANCIULLI: Thank you, Your Honor.

15     MR. ZANDFORD: Thank you.

16     (Whereupon at 3:25 p.m., the hearing in this matter

17  was concluded for this date.)

18     I, Elaine M. Ryan, approved transcriber for the

19  United States Courts, certify that the foregoing is a correct

20  transcript from the electronic sound recording of the

21  proceedings in the above-entitled matter.

22

23     *Elaine M. Ryan*                    January 7, 2008
       Elaine M. Ryan
       2801 Faulkland Road
       Wilmington, DE 19808
       (302) 683-0221

PENGAD • 1-800-631-6989

FORM FED

# EXHIBIT 6

# CHAPTER 5-2: DETECTING FRAUD AND ABUSE

## 5-2.1 DETECTION BY THE UNITED STATES TRUSTEE

### 5-2.1.1 Section 341 Meetings

The section 341 meeting provides an excellent opportunity to detect fraud and abuse. Questions by creditors, especially banks and other financial institutions, will often disclose the use of false social security numbers, the omission of assets, the improper disposition of property, as well as other irregularities.

The person conducting a section 341 meeting should verify the identity of the individual testifying and, in the case of a corporate debtor, the authority of the individual to testify on behalf of the debtor. All co- debtors should be present at the section 341 meeting, e.g., where a married couple files jointly, both spouses must be present and identified on the record.

The debtor should affirm, on the record, that he/she signed the petition and schedules submitted to the court, that he/she read them before signing them, and reaffirm that they are true and correct. If the debtor is hesitant on any of these issues, follow up questions should be asked.

Creditors should be allowed sufficient time to ask questions, especially those relating to the accuracy of the filings or pleading. The hearing should be continued, rather than concluded, if satisfactory answers are not provided at the initial meeting.

### 5-2.1.2 Rule 2004 Examinations

The United States Trustee may also conduct an examination of debtor or other party pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. Where such an examination reveals evidence of fraud or abuse, it is important to ask follow-up questions to fully develop the relevant facts.

### 5-2.1.3 Use of Outside Agencies to Verify Accuracy of Information on Petition and Schedules

A debtor's petition and schedules should be examined for completeness and consistency. It is possible to verify the accuracy of information contained in a petition by checking it against information obtained from other agencies.

Examples of inquiries include: a suspicious social security number can be

verified with the Social Security Administration; the status of loan payments and the transfer of property can be verified with the Federal Deposit Insurance Corporation; and the status of postpetition tax payments can be verified with the Special Procedures Branch of the Internal Revenue Service. In addition, under the provisions of 31 U.S.C. § 5319, information collected about monetary transactions over $10,000 may be secured by a request of the Director through the Financial Crimes Enforcement Network (FinCEN) of the Department of Treasury. Requests for FinCEN information are reserved for cases involving serious irregularities.

## 5-2.1.4 On-line Investigative Public Records Information

The Program has contracted with CDB Infotek to provide on-line access to public records information. Every office has access to the database by a dial-up line. The Infotek service can be a resource to identify and locate assets, verify social security numbers, and obtain litigation history information.

Information printed from the database should be handled as "Limited Official Use" information. See USTM 6-21.4 for additional information on document/information security.

## 5-2.1.5 Investigations Must Have Legitimate Civil Purpose

All investigations conducted by the United States Trustee, including section 341 meetings and Rule 2004 examinations, must relate to a valid civil enforcement goal of the United States Trustee. No investigation may be conducted purely for the purpose of developing evidence to support a criminal referral. U.S. v. Unruh, 855 F.2d 1363, 1374 (9th Cir. 1987), cert. denied, 488 U.S. 474 (1987). Criminal sanctions may not be threatened in the course of a civil proceeding.

## 5-2.2 THIRD PARTY SOURCES

## 5-2.2.1 Referrals from Panel and Standing Trustees

Case trustees should be encouraged to bring any evidence of fraud or misconduct to the attention of the United States Trustee. Trustees may become discouraged from making referrals because of the relatively few resulting criminal prosecutions. It is important to assure them that referrals serve multiple purposes, including tracking trends in fraudulent activity and documenting the need for additional investigative and prosecutorial resources. The United States Trustee should also emphasize that the level and effectiveness of a trustee's referrals are important elements in the performance rating process.

Case trustees should prepare their own criminal referral letters, under the supervision of the United States Trustee. Referrals of debtors should be transmitted under 18 U.S.C. § 3057, through the United States Trustee. If a case trustee makes a referral directly to a law enforcement agency, a copy should be furnished to the United States Trustee.

### 5-2.2.2 Complaints from Various Third Parties

Creditors, employees, former business associates, estranged or former spouses, and significant others are all likely candidates to provide information about possible criminal misconduct. Often such complaints are made via the telephone or a complainant may request to meet in person to discuss his/her concerns.

It is generally advisable to request a complainant to provide a written summary of his/her complaint, together with all documentation or other evidence that supports the allegations. This not only assists in "weeding out" complaints that are based on mere suspicion or rumor, but it also provides a documented, first-hand statement that can form the basis of a criminal referral.

### 5-2.2.3 Third Party Motions, Adversary Proceedings, and Rule 2004 Examinations

The United States Trustee should monitor third party actions against a debtor for evidence of criminal misconduct. Particular attention should be given to cases where multiple relief from stay actions have been filed or where a creditor moves to deny a debtor's discharge. Rule 2004 examinations conducted in support of third party motions can yield useful facts relating to fraud and misconduct.



Back    USTP Home Page    DOJ Home Page

*Page last updated on May 6, 1998*
*usdoj-eoust/msd/mc*

EXHIBIT 7

LAW OFFICES

# WEIR & PARTNERS LLP

SUITE 500
THE WIDENER BUILDING
1339 CHESTNUT STREET
PHILADELPHIA, PA 19107

(215) 665-8181
FAX (215) 665-8464

Federal Tax I.D. 23-2830271

July 13, 2007

ALFRED THOMAS GUILIANO
750 ROUTE 73 SOUTH
SUITE 110
MARLTON, NJ 08053

Re:    2586    0104

CASE ADMINISTRATION

Bill Number:    88851982

Professional Services through    May 31, 2007

| Atty | Service Date | Hours | Rate | Description | Amount |
|------|-------------|-------|------|-------------|--------|
| KEA | 12/22/2005 | 0.20 | 375.00 | TELEPHONE CALL WITH FRED RE: ENGAGEMENT AS COUNSEL | $75.00 |
| KEA | 12/22/2005 | 0.20 | 375.00 | TELEPHONE CALL WITH AMY GREER - DISTRICT COUNSEL - SEC (215-597-0687) RE HISTORY OF CASE | $75.00 |
| KEA | 12/22/2005 | 0.20 | 375.00 | TELEPHONE CALL WITH GEORGE OBRECHT III - WIFE'S ESTATE COUNSEL - (410-544-9521) NOT TO DISTRIBUTE ESTATE FUNDS OTHER THAN TO FRED | $75.00 |
| JL | 12/22/2005 | 0.20 | 110.00 | REVIEW DOCKET ENTRIES, SCHEDULES FOR NEW CASE RE: CHARLES ZANDFORD | $22.00 |
| JL | 12/27/2005 | 0.30 | 110.00 | PREPARE 2002 SERVICE LIST IN CHARLES ZANDFORD BANKRUPTCY | $33.00 |
| KEA | 01/03/2006 | 0.20 | 375.00 | LETTER REGARDING EXECUTOR RE ESTATE FUND | $75.00 |
| KEA | 01/03/2006 | 0.20 | 375.00 | INSTRUCTIONS TO J. CIANCIULLI RE: MOTION TO TAKE 341 BY INTERROGATORIES | $75.00 |
| JSC | 01/03/2006 | 0.30 | 200.00 | DISCUSSION WITH AARON RE: ISSUES RELATING TO MEETING OF CREDITORS AND GENERAL CASE STRATEGY | $60.00 |
| JSC | 01/03/2006 | 0.20 | 200.00 | REVIEW MOTION TO CONDUCT MEETING BY INTERROGATORY | $40.00 |
| JSC | 01/04/2006 | 0.10 | 200.00 | REVIEW LETTER FROM AARON TO DECEDENTS ESTATE ADMINISTRATOR REGARDING BANKRUPTCY ESTATE INTEREST IN PAYMENTS | $20.00 |
| KEA | 01/05/2006 | 0.40 | 375.00 | TELEPHONE WITH ESTATE REPRESENTATIVE RE: DISTRIBUTION; LETTER TO ESTATE | $150.00 |

EXHIBIT 8

*21*

2-1.6.3    Notice and Acceptance of the Appointment ........................ 10

2-1.6.4    Non-Panel Trustees in Converted Cases ......................... 11

2-1.6.5    Involuntary Chapter 7 Cases .................................. 11

2-1.6.6    Conflicts of Interest ....................................... 11

2-1.6.7    United States Trustee Serving as Case Trustee ................... 13

2-1.6.8    Election of Trustees ....................................... 14

2-1.6.8.1    Eligibility to Request an Election and to Vote ................... 14

2-1.6.8.2    Trustee Election Procedure .................................. 14

2-1.6.8.3    Voting by Proxy ......................................... 17

2-1.6.8.4    Election Reports ........................................ 18

2-1.6.8.5    Disputed Elections ....................................... 19

2-1.6.8.6    Qualification of Elected Trustees ............................ 19

2-1.6.8.7    Duties and Responsibilities of Elected Trustees .................. 19

2-1.7      SUCCESSOR TRUSTEES ..................................... 19

2-1.7.1    Death of a Trustee ....................................... 20

2-1.8      REOPENED CASES ......................................... 21

### CHAPTER 2-2:   ADMINISTRATION OF CHAPTER 7 ESTATES

2-2.1      INTRODUCTION .......................................... 21

2-2.2      STATUTORY DUTIES UNDER § 704 ............................ 22

2-2.2.1    Collection and Liquidation of Assets, § 704(1) .................. 23

Table of Contents - (ii)

2-2.2.2      **Accountability of the Trustee, § 704(2)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

2-2.2.2.1    Control and Preservation of Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

2-2.2.2.2    Inventory of Estate Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

2-2.2.2.3    Environmental Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

2-2.2.3      **Examining the Debtor's Exemptions and Statement
             of Intention, § 704(3)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

2-2.2.3.1    Initial Review of Exemptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

2-2.2.3.2    Review of Statement of Intention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

2-2.2.4      **Investigate the Financial Affairs of the Debtor, § 704(4)** . . . . . . . . . . . . . . . 26

2-2.2.5      **Examine Proofs of Claim, § 704(5)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

2-2.2.6      **Oppose the Discharge of the Debtor, § 704(6)** . . . . . . . . . . . . . . . . . . . . . . . . . 27

2-2.2.7      **Furnish Information Concerning the Estate, § 704(7)** . . . . . . . . . . . . . . . . . . 28

2-2.2.8      **Operating Reports, § 704(8)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

2-2.2.9      **Final Report and Final Account of the Estate, § 704(9)** . . . . . . . . . . . . . . . . . 29

2-2.3        **REVIEW OF PETITION, SCHEDULES, AND STATEMENTS** . . . . . . . . 29

2-2.3.1      **Review of Petition and Schedules** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

2-2.3.2      **Review of Debtor's Attorney Fees** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

2-2.3.3      **Review for Petition Preparers** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

2-2.3.4      **Review for Substantial Abuse Under § 707(b)** . . . . . . . . . . . . . . . . . . . . . . . . 32

2-2.3.4.1    Determination of "Primarily Consumer Debt" . . . . . . . . . . . . . . . . . . . . . . . . . . 32

2-2.3.4.2    Determining Substantial Abuse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

2-2.3.4.3    Timing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

**2-2.4    SECTION 341 MEETING** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**2-2.4.1    Duty to Preside at Meeting** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**2-2.4.2    Conducting the Meeting** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**2-2.4.3    Rescheduling and Continuances** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

**2-2.4.4    Non-Attendance by Attorneys** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

**2-2.4.5    Non-Attendance by Debtors** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

**2-2.5    ADMINISTRATION OF A CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

**2-2.5.1    Determination and Administration of No-Asset Cases** . . . . . . . . . . . . . . . . 39

**2-2.5.2    Claims Bar Date** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

**2-2.5.3    Exemptions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

**2-2.5.4    Abandonments** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

**2-2.5.5    Turnover Demands** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

**2-2.5.6    Executory Contracts and Unexpired Leases** . . . . . . . . . . . . . . . . . . . . . . . 43

**2-2.5.7    Avoidance Powers** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

2-2.5.7.1    Section 544 - General Power . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

2-2.5.7.2    Section 545 - Statutory Liens . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

2-2.5.7.3    Section 546 - Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

2-2.5.7.4    Section 547 - Preferences . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

2-2.5.7.5    Section 548 - Fraudulent Transfers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

2-2.5.7.6    Section 549 - Postpetition Transfers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Table of Contents - (iv)

United States Trustee Manual                                    Chapter 7 Case Administration

2-2.5.7.7    Section 553 - Setoff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

2-2.5.7.8    Section 724(a) - Fines, Penalties, or Forfeitures . . . . . . . . . . . . . . . . . . . . . . . . 47

**2-2.5.8    Contested Matters and Adversary Proceedings** . . . . . . . . . . . . . . . . . . . . . . . 47

**2-2.5.9    Operating the Debtor's Business** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

**2-2.5.10   Sale of Assets** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

2-2.5.10.1   General Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

2-2.5.10.2   Sale Free and Clear of Liens . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

2-2.5.10.3   Sale of Jointly Owned Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

2-2.5.10.4   Sales of Secured Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

2-2.5.10.5   Conduct of Sales . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

2-2.5.10.6   Periodic Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

**2-2.5.11   Review of Claims** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

2-2.5.11.1   Objections to Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

2-2.5.11.2   Unpaid Quarterly Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

**2-2.5.12   Subordination of Claims** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

2-2.5.12.1   Section 510(a) - Agreements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

2-2.5.12.2   Section 510(b) - Purchase or Sale of Stock . . . . . . . . . . . . . . . . . . . . . . . . . . 57

2-2.5.12.3   Section 510(c) - Equitable Subordination . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

2-2.5.12.4   Section 724(b) - Subordination of Tax Liens . . . . . . . . . . . . . . . . . . . . . . . . . 57

**2-2.5.13   Redemption** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

**2-2.5.14   Reaffirmation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

Table of Contents - (v)

United States Trustee Manual                    Chapter 7 Case Administration

2-2.6       **TAX CONSIDERATIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

2-2.6.1     **Overview** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

2-2.6.2     **Individual Chapter 7 Debtors** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

2-2.6.3     **Partnership and Corporate Chapter 7 Debtors** . . . . . . . . . . . . . . . . . . . . . . . 63

2-2.6.4     **Employment Taxes and Other Tax Forms** . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

2-2.6.5     **Employee W-2 Forms** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

2-2.6.6     **Sales and Abandonments** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

2-2.6.7     **Failure to Pay** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

2-2.6.8     **Quick Audits** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

2-2.7       **EMPLOYMENT AND SUPERVISION OF PROFESSIONALS** . . . . . . . . . 67

2-2.7.1     **Definition of Professionals** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

2-2.7.2     **Employment Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

2-2.7.3     **Employment Procedures** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

2-2.7.4     **Supervision of Professionals** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

2-2.7.5     **Trustee as Attorney or Accountant for the Estate** . . . . . . . . . . . . . . . . . . . . 70

2-2.7.6     **Retention of Auctioneers** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

2-2.7.6.1   General Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

2-2.7.6.2   Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

2-2.7.6.3   Bonding and Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

2-2.7.6.4   Turnover of Proceeds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

2-2.7.6.5   Auctioneer's Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

Table of Contents - (vi)

2-2.7.7      **Retention of Appraisers** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

2-2.8        **COMPENSATION OF TRUSTEES AND PROFESSIONALS** . . . . . . . . . . 74

2-2.8.1      **Compensation of Trustees** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

2-2.8.2      **Interim Compensation of Trustees** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

2-2.8.3      **Compensation of Professionals** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

2-2.8.4      **Applications for Compensation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

2-2.9        **DISMISSALS AND CONVERSIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

2-2.9.1      **Dismissals or Conversions of a Chapter 7 Case** . . . . . . . . . . . . . . . . . . . . . . 77

2-2.9.2      **Conversion of Cases From Another Chapter to Chapter 7** . . . . . . . . . . . . . 78

2-2.10       **REOPENING CLOSED CASES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

2-2.11       **REFERRAL OF POTENTIAL BANKRUPTCY CRIMES** . . . . . . . . . . . . . 79

2-2.11.1     **Detecting Criminal Activity** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

2-2.11.2     **Types of Criminal Conduct** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

2-2.11.3     **Compliance With the Trustee's Duty to Report Criminal Conduct** . . . . . . 82

**CHAPTER 2-3:    TRUSTEE SUPERVISION**

2-3.1        **ROLE OF THE UNITED STATES TRUSTEE** . . . . . . . . . . . . . . . . . . . . . . . . 83

2-3.1.1      **Memorandum of Understanding** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84

2-3.2        **REPORTS IN NO-ASSET CASES (NDRs)** . . . . . . . . . . . . . . . . . . . . . . . . . 85

2-3.3        **REPORTS FOR CLOSING ASSET CASES: FINAL REPORTS**
             **(TFRs) and FINAL ACCOUNTS (TRUSTEE**
             **DISTRIBUTION REPORTS or TDRs)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86